KATE D. JONES, Senior Deputy (SBN 315650)
TALIA V. EDELMAN, Deputy (SBN 332627)
Office of County Counsel, County of San Diego
1600 Pacific Highway, Room 355
San Diego, California 92101
Telephone: (619) 531-5888; (619) 531-4860
Facsimile: (619) 531-6005
E-mail: kate.jones@sdcounty.ca.gov; talia.edelman@sdcounty.ca.gov

Attorneys for Defendants County of San Diego, Kaliha Johnson, Robyn Charlton, Mary Robilotta, and Diana Shreckengost

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUTH POPE, an individual; KRISTOFFER POPE, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN DIEGO, a public entity; KALIHA JOHNSON, an individual; ROBYN CHARLTON, an individual; MARY ROBILOTTA, an individual; DIANA SHRECKENGOST, an individual; DOE HHSA Workers 1-10, known but unidentified individuals; and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No. 21-cv-1102-JLS-BGS <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF KALIHA JOHNSON, ROBYN CHARLTON, AND MARY ROBILOTTA'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** <br><br> **[Fed. R. Civ. P. 12(b)(6)]** <br><br> Date: October 21, 2021 <br> Time: 1:30 p.m. <br><br> Judge: Hon. Janis L. Sammartino <br> Courtroom: 4D |

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ........................................................................... 1

II.    SUMMARY OF PLAINTIFFS' FACTUAL ALLEGATIONS .................................. 2

III.   LEGAL STANDARD ...................................................................... 5

IV.    ARGUMENT ............................................................................... 5

    A.    Plaintiffs Cannot State a Fourteenth Amendment Claim for the Seizure of J.P.1, N.P., and J.P.2 Because the Children Were Removed Pursuant to a Court Order ................................................ 5

    B.    County Social Workers are Entitled to Qualified Immunity for Plaintiffs' Claim Regarding J.P.1's Medical Examination ........................... 7

        1.    Defendants did not violate Plaintiffs' Fourteenth Amendment rights.. 9

        2.    Plaintiffs' rights were not clearly established.................................... 12

    C.    Plaintiffs Fail to State a Judicial Deception Claim ....................................... 14

    D.    Plaintiffs Fail to State a Claim for Punitive Damages Against County Social Workers ................................................................ 16

V.     CONCLUSION............................................................................ 17

i

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Anderson v. City of Lemon Grove, No. 10-CV-0689-IEG* (RBB),
2011 U.S. Dist. LEXIS 33405 (S.D. Cal. Mar. 29, 2011) ................................ 6

*Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ...................................................... 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................. 17

*Beltran v. Santa Clara Cty.*, 389 F. App'x 679 (9th Cir. 2010) ................... 15, 16

*Benavidez v. Cty. of San Diego*, 993 F.3d 1134 (9th Cir. 2021) ................. 14, 15

*Brown v. Alexander, No. 13-cv-01451-RS*, 2016 U.S. Dist. LEXIS 27378
(N.D. Cal. Mar. 3, 2016) ................................................................................. 7, 8

*Chapman v. Bluffs of Fox Run Homeowners Ass'n, No. 16-cv-489-BAS*(AGS),
2016 U.S. Dist. LEXIS 171537 (S.D. Cal. Dec. 12, 2016) ........................... 17

*City of Escondido v. Emmons*, 139 S. Ct. 500 (2019) .......................................... 9

*Cobbs v. Grant*, 8 Cal. 3d 229 (1972) ................................................................ 11

*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009) ............................................. 9

*Dang v. Cross*, 422 F.3d 800 (9th Cir. 2005) ............................................... 16, 17

*El v. Dep't of Children Family Servs., No. 2:19-cv-08484-VBF-FFM*,
2020 U.S. Dist. LEXIS 82804 (C.D. Cal. Jan. 10, 2020) ............................... 6

*Elder v. Holloway*, 510 U.S. 510 (1994) .............................................................. 8

*Ewing v. City of Stockton*, 588 F.3d 1218 (9th Cir. 2009) ................................. 15

*Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) ...................... 16

*Heck v. Humphrey*, 512 U.S. 477 (1994) ............................................................. 7

*Hervey v. Estes*, 65 F.3d 784 (9th Cir. 1995) ......................................... 14-15, 16

*In re Dakota H.*, 132 Cal. App. 4th 212 (2005) ................................................ 10

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ............................. 5

*Jameson v. Desta*, 215 Cal. App. 4th 1144 (2013) ............................................ 11

*Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116 (9th Cir. 2008) ............... 5

*Kaur v. City of Lodi*, 263 F. Supp. 3d 947 (E.D. Cal. 2017) ............................. 6

*Ketes v. Koile*, 883 F.3d 1228 (9th Cir. 2018) .................................................. 14

*Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784 (9th Cir. 2016) .......................... 6, 8

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018) ............................................................ 9

*Mabe v. San Bernardino Cty.*, 237 F.3d 1101 (9th Cir. 2001) ........................... 6

*Mann v. County of San Diego*, 907 F.3d 1154 (9th Cir. 2018) .................................. 8, 13

*Marceau v. Balckfeet Hous. Auth.*, 540 F.3d 916 (9th Cir. 2008) .......................... 5

*Mathis v. Morrissey*, 11 Cal. App. 4th 332 (1992) ........................................ 11

*McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) ........................................... 14

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ........................................... 5

*O'Doan v. Sanford*, 991 F.3d 1027 (9th Cir. 2021) ......................................... 8

*Pearson v. Callahan*, 555 U.S. 223 (2009) ................................................. 8

*Reichle v. Howards*, 566 U.S. 658 (2012) .................................................. 9

*Rosenbaum v. Washoe County*, 663 F.3d 1071 (9th Cir. 2011) ............................... 10

*Sharp v. Cty. of Orange*, 871 F.3d, 901 911-12 (9th Cir. 2017) .......................... 9, 12

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ........................ 5

*Swartwood v. County of San Diego*, 84 F. Supp. 1093 (S.D. Cal. Sept. 30, 2014) ..... 8, 13

*Teixeira v. Hanneman*, No. CV17-6673 PSG (KSx), 2018 U.S. Dist. LEXIS 237357, (C.D. Cal. May 30, 2018) ................................................................. 6

*Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 1999) .............................. 6, 8, 10, 13, 14

*White v. Pauly*, 137 S. Ct. 548, 552 (2017) .............................................. 12

*Woodrum v. Woodward Cty.*, 866 F.2d 1121 (9th Cir. 1989) ................................. 9-10

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) ................................................ 9

**Statutes**

42 United States Code
    Section 1983 ......................................................................... 4, 7, 16

California Penal Code
    Section 11165.7 ...................................................................... 12

California Welfare I Institutions Code
    Section 328 .......................................................................... 10

California Penal Code
    Section 273a ......................................................................... 4, 6, 7

**Other**

Federal Rule of Civil Procedure
    Rule 8 ....................................................................... 1, 2, 3, 4, 5, 14
    Rule 9 ............................................................................... 15
    Rule 12 .............................................................................. 1, 4

iii

County social workers Kaliha Johnson ("Ms. Johnson"), Robyn Charlton ("Ms. Charlton"), and Mary Robilotta ("Ms. Robilotta") move to dismiss Plaintiffs' Complaint (ECF No. 1) ("Complaint") pursuant to Federal Rule of Civil Procedure 8 and 12(b)(6).

## I.   INTRODUCTION

County social workers responded to a report of child abuse and neglect concerning Plaintiffs' oldest son, J.P.1.  According to the report, Ms. Pope locked J.P.1, who was five years old at the time, in Plaintiffs' garage all day as punishment.  After assessing the situation at Plaintiffs' home, speaking to witnesses, and consulting with the doctor who examined J.P.1 and concluded his injuries were likely the result of abuse, County social workers placed Plaintiffs' children in protective custody.

Plaintiffs allege County social workers Ms. Johnson, Ms. Charlton, and Ms. Robilotta violated their Fourteenth Amendment rights to familial association when they removed Plaintiffs' children without Plaintiffs' consent, exigency, or a court order.  This Court should dismiss Plaintiffs' claim, however, because County social workers obtained protective custody warrants prior to removing Plaintiffs' children.

Plaintiffs also allege Ms. Johnson, Ms. Charlton, and Ms. Robilotta violated their Fourteenth Amendment rights because Ms. Pope did not knowingly and voluntarily consent to J.P.1's medical examination at Balboa Naval Medical Center and was asked to wait outside the exam room while J.P.1 was examined.  But County social workers are entitled to qualified immunity because they did not violate Plaintiffs' constitutional rights.  Additionally, there was no controlling legal precedent holding that a social worker who instructs a parent with legal custody of their child to bring them to a doctor to be examined and asks the parent to wait outside the exam room based on a report that the parent abused the child, violates the parents' constitutional rights.

Plaintiffs further allege Ms. Johnson and Ms. Charlton violated their Fourteenth Amendment rights when they filed a warrant application and a detention report that contained false and misleading statements.  However, Plaintiffs' claim fails because they do not allege that absent these statements, the juvenile court would not have issued the

1

1  order removing Plaintiffs' children from Ms. Pope's care.  In fact, the court's disposition

2  order was previously challenged by Ms. Pope and affirmed by the State Court of Appeal,

3  citing evidence that Plaintiffs do not claim was fabricated.

4       Plaintiffs' claim for punitive damages should also be dismissed because Plaintiffs

5  fail to make a plausible claim that Ms. Johnson, Ms. Charlton, and Ms. Robilotta acted

6  with an evil intent or reckless indifference to Plaintiffs' rights.

7  **II.  SUMMARY OF PLAINTIFFS' FACTUAL ALLEGATIONS**

8       Plaintiffs Mr. Kristoffor Pope and Ms. Ruth Pope ("Plaintiffs") are a married

9  couple and the parents of three children: J.P.1, N.P., and J.P.2.  (Compl. ¶¶ 24-30.)  Mr.

10  Pope is enlisted in the United States Navy.  (*Id.* at ¶ 24.)  J.P.1 was born on June 1, 2014

11  and N.P. was born on June 24, 2017.  (*Id.* at ¶¶ 26-27.)  Plaintiffs then moved to San

12  Diego and J.P.2 was born on June 3, 2019.  (*Id.* at ¶¶ 27-28.)  Around the time of J.P.2's

13  birth, Mr. Pope was deployed.  (*Id.* at ¶ 28.)

14       On June 12, 2019, Ms. Pope arranged for a friend to pick up J.P.1 and N.P. and

15  watch them during the day.  (*Id.* at ¶ 33.)  At the time, J.P.1 was five years old and N.P.

16  was about two years old.  (*Id.* at ¶¶ 26-27.)  That morning, Ms. Pope disciplined J.P.1 for

17  waking and teasing N.P. and for being disobedient.  (*Id.* at ¶¶ 34-35.)  Ms. Pope decided

18  that instead of sending J.P.1 to her friend's house, she would punish J.P.1 by keeping him

19  at home in the garage.  (*Id.* at ¶ 36.)

20       Later that afternoon, two La Mesa police officers and Ms. Johnson and Ms.

21  Robilotta arrived at Plaintiffs' home.  (*Id.* at ¶ 40.)  Ms. Pope and J.P.1 were each

22  interviewed.  (*Id.* at ¶¶ 43-45.)  Next, Ms. Johnson and Ms. Robilotta asked Ms. Pope to

23  sign a "safety plan" that suggested J.P.1 stay with a friend that night.  (*Id.* at ¶ 46.)  Ms.

24  Pope signed the plan and sent J.P.1 to spend the night at her friend Almira Perry's house.

25  (*Id.* at ¶¶ 47-48.)

26       That evening, Ms. Johnson called Ms. Pope and asked her to bring the children to

27  the Balboa Naval Medical Center the next morning for medical examinations.  (*Id.* at ¶

28  50.)  According to the Complaint, Ms. Johnson told Ms. Pope the exams were "routine,"

*21-cv-1102-JLS-BGS*

1    but did not explain that the exams could detect evidence of child abuse.  (*Id.*)

2         On June 13, 2019, Ms. Pope brought N.P. and J.P.2, and Almira Perry brought

3    J.P.1, to the Balboa Naval Medical Center.  (*Id.* at ¶ 53.)  There, J.P.1 received a forensic

4    medical examination.  (*Id.* at ¶ 56.)  Ms. Johnson and Ms. Robilotta attended J.P.1's

5    exam, but Ms. Pope was told by Ms. Johnson that she would need to wait outside the

6    exam room.  (*Id.* at ¶ 55, 57.)  Ms. Pope stayed in a nearby waiting room.  (*Id.* at 54, 55.)

7    According to the Complaint, J.P.1 said that he slammed his finger in the car door while

8    he was in the garage the day prior.  (*Id.* at ¶ 60.)  J.P.1 then received an x-ray.  (*Id.*)  A

9    few hours later, a doctor told Ms. Pope that J.P.1's finger was fractured, but she did not

10   receive copies of the x-rays.  (*Id.* at ¶  60, 66.)

11        Also on June 13, 2019, N.P. and J.P.2 were visually examined by a doctor in Ms.

12   Pope's presence.  (*Id.* at ¶¶ 61, 71.)  Both children received more detailed examinations

13   in the following days.  (*Id.*)  Later in the day on June 13, 2019, Ms. Johnson told Ms.

14   Pope that J.P.1, N.P., and J.P.2 were being removed from Ms. Pope's care and placed in

15   protective custody.  (*Id.* at ¶¶  67, 68.)

16        On June 17, 2019, Ms. Johnson filed a juvenile dependency petition with the

17   juvenile court, reporting that Ms. Pope broke J.P.1's finger, bruised his face and arm, and

18   confined him to the garage all day.  (*Id.* at ¶ 69.)  The juvenile court held a detention

19   hearing on June 18, 2019.  (*Id.* at ¶ 71.)  Prior to the hearing, Ms. Johnson and Ms.

20   Charlton submitted a detention report to the juvenile court, which included the findings of

21   their investigation. (*Id.* at ¶¶ 71, 75.)  At the detention hearing, the juvenile court ordered

22   that Plaintiffs' children should continue to be detained out of Ms. Pope's care.  (*Id.* at

23   ¶ 75.)

24        Around July 9, 2019, County social workers filed a jurisdiction/disposition report

25   with the juvenile court.  (*Id.* at ¶ 88.)  Plaintiffs allege that it included the same

26   information in the detention report.  (*Id.* at ¶¶ 87-89.)

27        At the request of Ms. Pope's attorney, the juvenile court held two special hearings

28   on July 11 and July 18, 2019.  (*Id.* at ¶¶ 93, 94.)  At the July 18, 2019 hearing, the

3

1   juvenile court ordered that N.P. and J.P.2 be returned to Ms. Pope.  (*Id.* at ¶ 94.)  The

2   court denied Ms. Pope's request that J.P.1 be returned to her at that time.  (*Id.*)

3      After a contested jurisdiction/disposition hearing on or about August 26, 2019, the

4   juvenile court ordered that J.P.1 be removed from Plaintiffs' custody and placed in a

5   relative's home.  (RJN Ex. A, California Court of Appeal opinion, at 4.)  The juvenile

6   court ordered J.P.1's removal because it found that a substantial risk existed that J.P.1

7   would suffer non-accidental serious physical harm in Plaintiffs' care.  (*Id.* at 4.)  Ms.

8   Pope appealed the juvenile court's order to the State Court of Appeal.  (RJN Ex. A.)  On

9   February 19, 2020, the Court of Appeal affirmed the juvenile court's removal order,

10  holding that substantial evidence supported the decision.  (*Id.* at 7-10.)

11     On November 17, 2019, Mr. Pope returned from deployment.  (Compl. at ¶ 100.)

12  J.P.1 was returned to Plaintiffs' home around March 14, 2020, and the juvenile court's

13  jurisdiction over J.P.1 was terminated on August 11, 2020.  (*Id.* at ¶ 103.)

14     On February 12, 2021, Ms. Pope pled guilty to violating Penal Code section

15  237a(a).  (RJN Ex. E at 4.)  She admitted as part of her plea that on June 12, 2019, she

16  unlawfully and willfully permitted J.P.1 to be in a situation where his person or health

17  was endangered under circumstances likely to inflict great bodily injury.  (*Id.* at 2, 4.)

18     Plaintiffs assert three claims against Ms. Johnson, Ms. Charlton, and Ms. Robilotta

19  under 42 U.S.C. § 1983: (1) violation of Plaintiffs' Fourteenth Amendment rights when

20  Plaintiffs' children were removed from Ms. Pope's care and placed in protective custody,

21  (2) violation of Plaintiffs' Fourteenth Amendment rights when J.P.1 received a forensic

22  medical exam without parental consent, and (3) violation of Plaintiffs' Fourteenth

23  Amendment right to be free from judicial deception when Ms. Johnson and Ms. Charlton

24  submitted an application for a protective custody warrant and a detention report that

25  contained false or misleading statements.

26  **III.   LEGAL STANDARD**

27     Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper when a

28  complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to

4

1  relief that is plausible on its face,'" such that it fails to comport with the pleading

2  requirements set forth in Rule 8.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

3  *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A dismissal under Rule 12(b)(6) may

4  be based on the lack of a cognizable legal theory or on the absence of sufficient facts

5  alleged under a cognizable legal theory.  *Johnson v. Riverside Healthcare Sys.*, 534 F.3d

6  1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

7  Although Rule 8 does not require detailed factual allegations, "a plaintiff's obligation to

8  provide the grounds of his entitlement to relief requires more than labels and conclusions,

9  and a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556

10  U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  This standard asks for "more than a sheer

11  possibility that a defendant acted unlawfully."  *Id.*

12  In reviewing a challenged complaint, the court accepts all allegations of material

13  fact as true and construes these facts in the light most favorable to the non-moving party.

14  *Marceau v. Balckfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008).  However, the court

15  is not required "to accept as true allegations that are merely conclusory, unwarranted

16  deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d

17  1049, 1056-57 (9th Cir. 2008).  Nor is the court required to accept as true allegations

18  "that contradict matters properly subject to judicial notice."  *Sprewell v. Golden State*

19  *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

20  **IV.   ARGUMENT**

21  **A.   Plaintiffs Cannot State a Fourteenth Amendment Claim for the Seizure of J.P.1, N.P., and J.P.2 Because the Children Were Removed Pursuant to a Court Order**

22

23  Plaintiffs allege that Ms. Johnson, Ms. Charlton, and Ms. Robilotta seized J.P.1,

24  N.P., and J.P.2 from Ms. Pope's custody, without Plaintiffs' consent, a warrant, or

25  exigent circumstances, in violation of Plaintiffs' familial association rights.[1]  (*See* Compl.

26

27  _____

28  [1] Plaintiffs also allege violations of their First and Fourth Amendment rights. (Compl. ¶ 106.)  However, the right to familial association under the First Amendment is analyzed under the same standard as the right under the Fourteenth Amendment.  *See Kaur v. City of Lodi*, 263 F. Supp. 3d 947, 973 (E.D. Cal. 2017).  Thus, the same arguments apply.  The Fourth Amendment safeguards a child's right against unreasonable

5

1    ¶¶ 106-107.)  Under the Fourteenth Amendment, a state actor cannot remove a child from

2    parental care without a court order unless the actor has reasonable cause to believe the

3    child is in imminent danger of serious bodily injury.  *Wallis v. Spencer*, 202 F.3d 1126,

4    1138 (9th Cir. 1999); *Mabe v. San Bernardino Cty.*, 237 F.3d 1101, 1107 (9th Cir. 2001).

5            Here, Plaintiffs' familial association claim fails because Ms. Johnson, Ms.

6    Charlton, and Ms. Robilotta obtained warrants from the juvenile court to remove J.P.1,

7    N.P., and J.P.2 from Plaintiffs' custody prior to the removal.  In affirming the juvenile

8    court's removal order, the State Court of Appeal recounted the fact that County social

9    workers obtained a warrant to remove Plaintiffs' children.  (*See* RJN Ex. A at 3; *see also*

10   RJN Ex. B, protective custody warrants issued June 13, 2019.)  Thus, Plaintiffs cannot

11   state a claim based on the removal of their children.  *See also Teixeira v. Hanneman*, No.

12   CV17-6673 PSG (KSx), 2018 U.S. Dist. LEXIS 237357, at *6 (C.D. Cal. May 30, 2018)

13   (dismissing familial association claim where parent plaintiffs' children were placed in

14   protective custody pursuant to court order); *El v. Dep't of Children Family Servs.*, No.

15   2:19-cv-08484-VBF-FFM, 2020 U.S. Dist. LEXIS 82804, at *5-7 (C.D. Cal. Jan. 10,

16   2020) (finding no violation of the plaintiff's Fourteenth Amendment right where children

17   were removed by court order).

18           Additionally, Ms. Pope should be barred from bringing a removal claim for J.P.1

19   because she pled guilty and was convicted of violating California Penal Code section

20   273a(a).  (RJN Ex. E at 4.)  As part of her plea, Ms. Pope admitted to unlawfully and

21   willfully permitting J.P.1 to be in a situation where his person or health was endangered

22   under circumstances likely to inflict great bodily injury.  (*Id.* at 2, 4.)  A plaintiff who is

23   convicted of a crime under state law cannot seek damages in a federal civil rights action

24   under § 1983 if a judgment in the plaintiff's favor "would necessarily imply the invalidity

25

26   seizures without a warrant, but J.P.1, N.P., and J.P.2 are not plaintiffs in this action. *See Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 789 (9th Cir. 2016); *see also Anderson v.*

27   *City of Lemon Grove*, No. 10-CV-0689-IEG (RBB), 2011 U.S. Dist. LEXIS 33405, at *14 (S.D. Cal. Mar. 29, 2011) (seizure of child did not implicate the Fourth Amendment

28   rights of the child's parent).  Accordingly, Plaintiffs cannot state a viable Fourth Amendment claim.

6

of his conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). An action must be dismissed as barred by *Heck* if the plaintiff "would have to negate an element of the offense of which he has been convicted" in order to prevail in his civil rights action. *Id*. at 487 n.6.

Here, Plaintiffs argue that J.P.1's removal was unlawful because there were no facts to support that he was in danger of suffering severe bodily injury in Ms. Pope's care. (*See* Compl. ¶ 108.) But a finding by this Court that J.P.1 was not in danger of suffering severe bodily injury would imply that Ms. Pope's criminal conviction for child abuse is invalid. Unless Ms. Pope can show her conviction has been reversed or expunged, her removal claim is not cognizable under § 1983. *Heck*, 512 U.S. at 486-87.

Finally, Plaintiffs allege that Ms. Johnson and Ms. Charlton included false information in the warrant application that was submitted to the juvenile court. (*See* Compl. ¶ 131.) But such a claim can only proceed under a theory of judicial deception, which is analyzed below in Section C. *See Brown v. Alexander*, No. 13-cv-01451-RS, 2016 U.S. Dist. LEXIS 27378, at *14 (N.D. Cal. Mar. 3, 2016) (holding that where officers relied on a presumptively valid protective custody warrant to remove plaintiff's children, the plaintiff could challenge the removal on the basis that the officers obtained the warrant through judicial deception).

### B.   County Social Workers Are Entitled to Qualified Immunity for Plaintiffs' Claim Regarding J.P.1's Medical Examination

Plaintiffs allege that Ms. Johnson, Ms. Charlton, and Ms. Robilotta violated Plaintiffs' Fourteenth Amendment right to make medical decisions for their child when they directed that J.P.1 receive a forensic medical examination without obtaining a warrant or Ms. Pope's "knowing and voluntary" consent. (*See* Compl. ¶ 117.) Plaintiffs further allege violation of their rights when Ms. Pope was asked to wait outside of J.P.1's exam room and when Ms. Johnson instructed medical staff not to provide Ms. Pope with information about J.P.1's medical diagnosis, treatment, and care. (*Id*.) Plaintiffs contend that the rights at issue were clearly established as a result of the decisions in *Wallis v.*

7

1  *Spencer*, 202 F.3d 1126 (9th Cir. 2000), *Swartwood v. County of San Diego*, 84 F. Supp.

2  1093 (S.D. Cal. Sept. 30, 2014), and *Mann v. County of San Diego*, 907 F.3d 1154 (9th

3  Cir. 2018).  (*Id.* at ¶¶ 116, 118.)

4      The doctrine of qualified immunity "balances two important interests—the need to

5  hold public officials accountable when they exercise power irresponsibly and the need to

6  shield officials from harassment, distraction, and liability when they perform their duties

7  reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity "gives

8  government officials breathing room to make reasonable but mistaken judgments," and

9  "protects 'all but the plainly incompetent or those who knowingly violate the law.'"

10 *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335,

11 341 (1986)).

12     In evaluating a grant of qualified immunity, a court considers whether (1) the

13 public official's conduct violated a constitutional right and (2) whether the right was

14 clearly established at the time of the alleged misconduct.  *O'Doan v. Sanford*, 991 F.3d

15 1027, 1036 (9th Cir. 2021).  A court may exercise its discretion to address either prong

16 first, and if the answer to either is "no," then the public official cannot be held liable for

17 damages.  *Id.* (citing *Pearson*, 555 U.S. at 236); *see also Kirkpatrick*, 843 F.3d at 788,

18 792-93 (holding that even though there was a question of fact as to whether social

19 workers violated plaintiff's rights, the workers were entitled to qualified immunity

20 because the law at the time did not clearly establish the unconstitutionality of their

21 conduct).

22     Whether a constitutional right is clearly established is purely a question of law.

23 *Elder v. Holloway*, 510 U.S. 510, 511 (1994).  First, "the right allegedly violated must be

24 defined at the appropriate level of specificity before a court can determine if it was

25 clearly established."  *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009).  A court

26 must define the right at issue in light of the specific context of the case and "'not . . . at a

27 high level of generality.'"  *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per

28 curiam) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam); *see also*

21-cv-1102-JLS-BGS

1    *City and Cty. of S.F. v. Sheehan*, 135 S. Ct. 1765, 1775-76 (2015) ("The Supreme Court

2    has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly

3    established law at a high level of generality.").  Otherwise, "plaintiffs would be able to

4    convert the rule on qualified immunity . . . into a rule of virtually unqualified liability

5    simply by alleging violation of extremely abstract rights."  *White v. Pauly*, 137 S. Ct.

6    548, 552 (2017).

7          Once the right at issue is defined, a court must ask whether it would have been

8    sufficiently clear to a reasonable official that the alleged conduct was unlawful in the

9    situation he confronted.  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (quotations

10   omitted).  "In other words, existing precedent must have placed the statutory or

11   constitutional question beyond debate."  *Reichle v. Howards*, 566 U.S. 658, 664 (2012)

12   (quotations omitted); *see also Kisela*, 138 S. Ct. at 1153 ("officers are entitled to

13   qualified immunity unless existing precedent squarely governs the specific facts at

14   issue"); *Sharp v. Cty. of Orange*, 871 F.3d 901, 911-12 (9th Cir. 2017) (emphasizing that

15   cases of "obvious" constitutional misconduct, where an exception to the specific-case

16   requirement applies, are "rare").  "[T]he prior precedent must be 'controlling'—from the

17   Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts

18   outside the relevant jurisdiction."  *Sharp*, 871 F.3d at 911.

19              1.    <u>Defendants did not violate Plaintiffs' Fourteenth Amendment rights.</u>

20          Plaintiffs have not established that they suffered a deprivation of a liberty interest

21   related to J.P.1's medical examination.  Although a parent has a fundamental liberty

22   interest in companionship with his or her child, a parent's familial association right "is

23   not absolute" and must be balanced against the compelling independent interests of

24   children to be safe and to live free from abuse and neglect.  *Woodrum v. Woodward Cty.*,

25   866 F.2d 1121, 1125 (9th Cir. 1989); *In re Dakota H.*, 132 Cal. App. 4th 212, 223 (2005).

26   Therefore, the government's interest in protecting minor children from abusive parents

27   means parents to do not have the right to be free from child abuse investigations.  *See*

28   *Wallis v. Spencer*, 202 F.3d at 1138 (finding investigations into child abuse are

21-cv-1102-JLS-BGS

appropriate and necessary prior to a seizure of a child).  Additionally, to allege a Fourteenth Amendment violation premised on the unlawful interference with familial rights, a plaintiff must demonstrate that "the [alleged] harmful conduct must 'shock [ ] the conscience' or 'offend the community's sense of fair play and decency." *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1079 (9th Cir. 2011) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952)).

Here, Ms. Johnson, Ms. Charlton, and Ms. Robilotta were acting pursuant to state statutes requiring investigation upon reported child abuse when they responded to a report concerning J.P.1.  *See* Cal. Welf. & Inst. Code § 328 (if a social worker suspects abuse, she "**shall** immediately make any investigation he or she deems necessary") (emphasis added); Cal. Pen. Code §§ 11165.7(a)(15), 11166.  In fact, social workers can be subject to liability for failure to investigate or intervene when child abuse is suspected. *See Woodrum*, 866 F.2d at 1125 ("Failure to investigate or intervene when child abuse is suspected can subject a state and its employees to liability") (collecting cases). Therefore, it was neither unreasonable nor conscience-shocking for County social workers to advise Ms. Pope to have J.P.1 examined to determine if he had suffered abuse.

Further, according to Plaintiffs, Ms. Pope complied with County social workers' request to bring her children to Balboa Naval Medical Center for medical examinations. (*See* Compl. ¶ 53.)  However, because Ms. Johnson allegedly told Ms. Pope, "you don't have a choice," and Ms. Pope allegedly did not understand the nature of the exam until J.P.1's exam revealed signs of abuse, Plaintiffs now contend that Ms. Pope did not provide "knowing and voluntary" consent.  (*See id.* at ¶¶ 50, 56, 117.)  But this claim is contradicted by Plaintiffs' Complaint.

First, because J.P.1 was still in Ms. Pope's legal custody when she brought him to be examined at Balboa Naval Medical Center, the third party medical professionals who examined J.P.1 could not have examined him without Ms. Pope's informed consent.  *See, e.g.*, *Jameson v. Desta*, 215 Cal. App. 4th 1144, 1164 (2013) ("[A] physician has a fiduciary duty to disclose all information material the patient's decision when soliciting a

10

patient's consent to a medical procedure") (internal citations omitted); *Mathis v. Morrissey*, 11 Cal. App. 4th 332, 343 (1992) ("When a doctor recommends a particular procedure then he or she must disclose to the patient all material information necessary to the decision to undergo the procedure...."); *see Cobbs v. Grant*, 8 Cal. 3d 229, 243-44 (1972) (a parent must consent to medical treatment of a minor).  Moreover, even if Ms. Johnson told Ms. Pope she had "no choice" whether J.P.1 was examined, Ms. Johnson could not force the medical professionals at Balboa Naval Medical Center to conduct any evaluations or procedures on J.P.1 without Ms. Pope's consent.  The medical professionals had a fiduciary duty to J.P.1 and his parents, not to Ms. Johnson or the County.  In fact, Plaintiffs admit that medical professionals shared J.P.1's medical diagnosis and care with Ms. Pope despite Ms. Johnson's alleged instruction not to, telling her that J.P.1's finger was fractured and would not require a split or cast.  (*See* Compl. ¶ 66.)  So, to the extent Plaintiffs allege that Ms. Pope was denied access to J.P.1's medical diagnoses, their own Complaint contradicts such an allegation.

Second, Plaintiffs' Complaint contradicts their allegation that Ms. Pope did not understand the nature of the medical examination.  Although Plaintiffs allege that Ms. Pope was told the exams were "routine" and not "highly intrusive forensic medical examinations designed to uncover evidence of child abuse," Ms. Pope suspected the exam might lead to the removal of her children.  For example, Ms. Pope told Ms. Johnson, "I don't like this.  I know what you people do.  You like to take little black boys from their families and I have three of them," while scheduling the exam.  (Compl. ¶ 50.)  Ms. Pope also sought advice from a licensed foster care provider for the County prior to the examinations.  (*Id.* at ¶¶ 51-52.)  Ms. Pope explained what happened the day prior (when social workers and law enforcement arrived at her house to investigate a report that she had abused J.P.1) and followed the foster care provider's recommendation to bring "a list of names and phone numbers of [her] close friends and family who were in her support system" and "any records of therapy or other deployment support services" to County social workers when she arrived at the hospital.  (*See id.* at ¶¶ 52, 53.)  Thus, Ms.

11

1   Pope understood that J.P.1's medical examination was a part of the County's

2   investigation of child abuse and could lead to the removal of her children.

3       Moreover, Plaintiffs do not explain what Ms. Pope understood by a "routine" exam

4   or why she believed a "routine" exam would not uncover signs of abuse.  Under

5   California law, a physician is a "mandated reporter," and must report suspected child

6   abuse to local police or child welfare department.  Cal. Pen. Code §§ 11165.7(22);

7   11165.9.  Therefore, the fact that J.P.1's injuries were detected at an examination at

8   Balboa Naval Medical Center rather than at his pediatrician's office, was immaterial to

9   the examining physician's duty to report the suspected child abuse to the County.

10             2.   <u>Plaintiffs' rights were not clearly established.</u>

11       It is Plaintiffs' burden to identify a case indicating that the right allegedly violated

12   was clearly established.  *Sharp*, 871 F.3d at 911.  The precedent identified must be

13   "controlling—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a

14   consensus of courts outside the relevant jurisdiction." *Id.* (quotation marks and citation

15   omitted).  There is no clearly-established precedent "particularized to the facts of the

16   case," that would have put Ms. Johnson, Ms. Charlton, and Ms. Robilotta on notice that

17   their alleged actions were unconstitutional. *See White*, 137 S. Ct. at 552.  To meet the

18   high standard set forth in *White*, Plaintiffs would have to identify controlling precedent

19   establishing that in the context of a child abuse investigation, when a parent still has full

20   legal custody of a child, a social worker's verbal statement to the parent that the exam

21   was "routine" and that she didn't have a choice in bringing her child to be examined by

22   third-party medical professionals while she waited nearby was unconstitutional.  No such

23   precedent exists.

24       Plaintiffs identify *Swartwood v. County of San Diego*, 84 F. Supp. 1093 (S.D. Cal.

25   Sept. 30, 2014), *Mann v. County of San Diego*, 907 F.3d 1154 (9th Cir. 2018), and *Wallis*

26   *v. Spencer*, 202 F.3d 1126 (9th Cir. 2000).  These cases are distinguishable.

27       *Swartwood* is not controlling precedent, but it was discussed in the Ninth Circuit's

28   decision in *Mann*.  Both cases concerned medical examinations of children at Polinsky

21-cv-1102-JLS-BGS

Children's Center—a temporary shelter for children removed from their parents' custody. *See Swartwood*, 84 F. Supp. at 1100-01; *Mann*, 907 F.3d at 1156-57.

In *Mann*, the parent plaintiffs' children were removed from their custody under a suspicion of child abuse, and taken to Polinksy, where they received medical examinations without the plaintiffs' knowledge or consent and without a court order. 907 F.3d at 1156-57. The Ninth Circuit held that "under *Wallis*, the County is required to notify the parents and obtain parental consent (or a court order) in advance of performing the Polinsky medical examinations, and permit parents to be present for these examinations." *Id.* at 1162. The exam that J.P.1 received in this case was not performed at Polinsky, or any other County facility. And unlike the parents in *Mann*, who lost custody of their children prior to the examinations and therefore could not be nearby when the children were examined, Ms. Pope had legal custody of J.P.1 when he was examined, and she was in a nearby waiting room. *See* Compl. ¶ 55.

In *Wallis*, police seized children from their home, placed them in protective custody, and arranged for them to receive medical examinations to determine if they had been sexually abused. 202 F.3d at 1134-35. The parents in *Wallis* lost custody of their children prior to the examinations and did not have knowledge of the examinations or the opportunity to be present or nearby when they occurred. *Id.* The Ninth Circuit held that "parents have a right arising from the liberty interest in family association to be with their children while they are receiving medical attention (or to be in a waiting room or other nearby area if there is a valid reason for excluding them while all or a part of the medical procedure is being conducted)." *Id.* at 1142. The Court reasoned that a parent's interest "is particularly compelling at such times, in part because of the possibility that a need to make medical decisions will arise." *Id.* Here, J.P.1 was not removed from his parents' custody throughout the entirety of the medical examination. Ms. Pope had full legal control of the decision-making process with regard to J.P.1's care. She was in a nearby waiting room while J.P.1's examination was being conducted because there was a valid reason for excluding her—County social workers received a report that Ms. Pope

13

physically and emotionally abused J.P.1 one day prior.  Still, she was nearby and available to make medical decisions for J.P.1, had the need arose.  These critical distinctions between this instant case and the cases relied upon by Plaintiffs necessitate that Ms. Johnson, Ms. Charlton, and Ms. Robilotta be granted qualified immunity.

### C.    Plaintiffs Fail to State a Judicial Deception Claim

Plaintiffs allege that Ms. Johnson and Ms. Charlton acted to "deliberately or recklessly present false statements and/or omit and/or actively suppress known exculpatory material" in the protective custody warrant application and detention report filed with the juvenile court, in violation of Plaintiffs' due process rights.[2]  (*See* Compl. ¶¶ 69, 70, 71, 130, 131.)

To successfully allege a violation of the constitutional right to be free from judicial deception, Plaintiffs must make out a claim that includes (1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, and (3) material to the judicial decision.  *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1147 (9th Cir. 2021); *Ketes v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018).  In other words, Plaintiffs must make a substantial showing that the challenged report contained misrepresentations or omissions that were material because probable cause could not be established without them.  *Hervey v. Estes*, 65 F.3d 784, 788-89 (9th Cir. 1995) (holding that a failure to point out inconsistencies to the court did not amount to "deliberate falsity or reckless disregard of the truth of the statements in the affidavit"); *see also Beltran v. Santa Clara Cty.*, 389 F. App'x 679, 681 (9th Cir. 2010) (holding that nine alleged misrepresentations in a protective custody warrant was insufficient to state a judicial deception claim because the falsities did not negate probable cause).

A claim for judicial deception may not be based on "omissions or misstatements

---

[2] Although Plaintiffs name Ms. Robilotta in this claim, Plaintiffs do not allege that Ms. Robilotta made any particular false statements or omissions to the juvenile court. *See McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996) (Rule 8 requires a pleading to contain "clear and concise averments stating which defendants are liable to plaintiffs for which wrongs").  Therefore, Plaintiffs' judicial deception claims against Ms. Robilotta must be dismissed.

14

resulting from negligence or good faith mistakes" or from "erroneous assumptions" made on the basis of the information received. *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009) (quoting *United States v. Smith*, 588 F.2d 737, 740 (9th Cir. 1978).  In fact, the Ninth Circuit recently reaffirmed this legal principle and applied the heightened pleading standard of Rule 9(b) to a judicial deception claim against social workers for statements made to the juvenile court. *Benavidez*, 993 F.3d at 1148-49.  Under this standard, a plaintiff must plead with particularity the circumstances constituting fraud, including what is false or misleading about a statement.  Fed. R. Civ. P. 9(b); *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016).  A heightened pleading standard is appropriate because allegations of false representations are easily made.  *See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (9th Cir. 2011) (fraud claims are governed by Rule 9(b) to "ensure that such fraught allegations are not lightly leveled.")

Here, Plaintiffs allege Ms. Johnson and Ms. Charlton submitted a protective custody warrant application and a detention report to the juvenile court that contained false statements about what J.P.1 and Ms. Pope said about how J.P.1 sustained his injuries, the conditions of the garage J.P.1 was in on June 12, 2019, and Plaintiffs' use of physical punishment.  (*See* Compl. ¶¶ 71, 131.)  But Plaintiffs' claim fails because they have not plausibly alleged that the false statements made by Ms. Johnson and Ms. Charlton were material to the judicial court's decision to remove or detain Plaintiffs' children.  Put another way, Plaintiffs cannot establish that, but for the false statements, the juvenile court would not have removed or detained Plaintiffs' children.  *See Benavidez*, 993 F.3d at 1147.

Even if this Court set aside the statements and evidence that Plaintiffs claim are false, the protective custody warrant application and detention report still contained enough evidence to support the removal decision.  *See* RJN Ex. A at 8*;* RJN Ex. C, Detention Report filed June 18, 2019 at 133-134, 140-142, 144; *Hervey*, 65 F.3d at 790 (reversing grant of summary judgment on judicial deception claim where "[t]he falsely

1    included facts constituted the entire substance of the affidavit"); *Beltran*, 389 F. App'x at
2    681 (finding no judicial deception claim where alleged falsities did not negate probable
3    cause). In fact, the State Court of Appeal affirmed the juvenile court's disposition order,
4    relying on *other* statements and evidence that Plaintiffs do not allege was fabricated to
5    find that Ms. Pope's conduct posed a "substantial risk of harm to J.P.[1] and that such a
6    risk could only be obviated by removing him from this mother's custody."  *See* RJN Ex.
7    A at 7-10.  The *other* statements and evidence that the State Court of Appeal relied on
8    include: a child abuse expert's conclusion that the "extensive patterned injuries" on
9    J.P.1's body were consistent with "a history of being struck multiple times on multiple
10   parts of the body"; that Ms. Pope repeatedly stated J.P.1 is "malicious and does things to
11   stress me out"; and that Ms. Pope acknowledged that she needed to change her parenting
12   and discipline methods.  *Id*.  Thus, the statements and evidence that Plaintiffs' claim was
13   fabricated were not material to the juvenile court's decision to order the children be
14   removed and detained from their parents.  The juvenile court had enough evidence from
15   the forensic examinations of the children and statements made by Ms. Pope to remove
16   and detain the children.  Accordingly, Plaintiffs' judicial deception claims must fail.

### D.   Plaintiffs Fail to State a Claim for Punitive Damages Against County Social Workers

19        Plaintiffs' request for punitive damages against Ms. Johnson, Ms. Charlton, and
20   Ms. Robilotta should be dismissed.  (*See* Compl. ¶¶ 114, 124, 138.)  "[P]unitive damages
21   may be assessed under 42 U.S.C. § 1983 when a defendant's conduct is shown to be
22   motivated by evil motive or intent, or if it involves reckless or callous indifference to the
23   federally protected rights of others."  *Fair Housing of Marin v. Combs*, 285 F.3d 899, 916
24   (9th Cir. 2002) (internal citations omitted); *see also Dang v. Cross*, 422 F.3d 800, 807-09
25   (9th Cir. 2005).

26        Plaintiffs fail to state a claim for punitive damages because they merely make
27   formulaic recitations of the punitive damages standard by alleging Ms. Johnson, Ms.
28   Charlton, and Ms. Robilotta "[i]n doing the things alleged . . . acted intentionally and/or

21-cv-1102-JLS-BGS

with a conscious disregard for Plaintiffs' rights." *See* Compl. ¶¶ 114, 124, 138; *Twombly*, 550 U.S. at 555. Plaintiffs allege that Ms. Johnson spoke to Ms. Pope "in an arrogant and haughty manner" and "barked" orders at her. *Id.* at ¶¶ 46, 55. Plaintiffs also allege that Ms. Johnson and Ms. Robilotta "snickered" at Ms. Pope when she brought documents to them at Balboa Naval Medical Center. *Id.* at ¶ 46. Plaintiffs do not allege that they had any contact with Ms. Charlton. *See id.* at ¶¶ 71-74. These factual allegations do not support Plaintiffs' claim that Ms. Johnson, Ms. Charlton, and Ms. Robilotta's conduct was motivated by an evil intent or reckless indifference to Plaintiffs' rights. *See Dang*, 422 F.3d at 807; *Chapman v. Bluffs of Fox Run Homeowners Ass'n*, No. 16-cv-489-BAS(AGS), 2016 U.S. Dist. LEXIS 171537, at *9 (S.D. Cal. Dec. 12, 2016) (rejecting a claim for punitive damages because plaintiffs "allege little more than legal conclusions and a formulaic recitation of the 'intentional and reckless' standard for punitive damages"). Because Plaintiffs have not demonstrated any entitlement to punitive damages arising out of County social workers' conduct, their punitive damages claim should be dismissed.

## V.    CONCLUSION

For the reasons set forth above and in County social worker defendants' motions to dismiss, the County requests that this Court dismiss Plaintiffs' Complaint.

DATED:  September 22, 2021    OFFICE OF COUNTY COUNSEL

By:    s/Kate D. Jones, Senior Deputy
          Talia V. Edelman, Deputy
Attorneys for Defendants Kaliha Johnson, Robyn Carlton, and Mary Robilotta
E-mail: kate.jones@sdcounty.ca.gov; talia.edleman@sdcounty.ca.gov

17