KATE D. JONES, Senior Deputy (SBN 315650)
TALIA V. EDELMAN, Deputy (SBN 332627)
Office of County Counsel, County of San Diego
1600 Pacific Highway, Room 355
San Diego, California 92101
Telephone: (619) 531-5888; (619) 531-4860
Facsimile: (619) 531-6005
E-mail: kate.jones@sdcounty.ca.gov; talia.edelman@sdcounty.ca.gov

Attorneys for Defendants County of San Diego, Kaliha Johnson, Robyn Charlton, Mary Robilotta, and Diana Shreckengost

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUTH POPE, an individual;<br>KRISTOFFER POPE, an individual,<br><br>        Plaintiffs,<br><br>    v.<br><br>COUNTY OF SAN DIEGO, a public entity; KALIHA JOHNSON, an individual; ROBYN CHARLTON, an individual; MARY ROBILOTTA, an individual; DIANA SHRECKENGOST, an individual; DOE HHSA Workers 1-10, known but unidentified individuals; and DOES 1 through 20, inclusive,<br><br>        Defendants. | Case No. 21-cv-1102-JLS-BGS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIANA SHRECKENGOST'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>**[Fed. R. Civ. P. 12(b)(6)]**<br><br>Date: October 21, 2021<br>Time: 1:30 p.m.<br><br>Judge: Hon. Janis L. Sammartino<br>Courtroom: 4D |

21-cv-1102-JLS-BGS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

**Page(s)**

I.      INTRODUCTION ..................................................................................... 1

II.     SUMMARY OF PLAINTIFFS' FACTUAL ALLEGATIONS .............................. 2

III.    ARGUMENT ............................................................................................ 4

        A.      The Court Should Dismiss Plaintiffs' § 1983 Claims against Ms.
                Shreckengost ............................................................................... 4

                1.      Ms. Shreckengost is Entitled to Qualified Immunity for
                        Plaintiffs' Claim that J.P.1 was Vaccinated Without Parental
                        Notice or Consent .............................................................. 5

                2.      Plaintiffs Fail to State a Claim against Ms. Shreckengost for
                        Judicial Deception ............................................................. 9

        B.      Plaintiffs Fail to State a Claim for Punitive Damages Against Ms.
                Shreckengost ............................................................................. 13

IV.     CONCLUSION ....................................................................................... 14

i

1

## TABLE OF AUTHORITIES

2

| **Cases** | **Page(s)** |
|---|---|
| *Ashcroft v. al-Kidd,* 563 U.S. 731 (2011) ............................................................... 5 | |
| *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................... 4 | |
| *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 14 | |
| *Beltran v. Santa Clara Cty.*, 389 F. App'x 679 (9th Cir. 2010) ................................. 10, 11 | |
| *Benavidez v. Cty. of San Diego*, 993 F.3d 1134 (9th Cir. 2021) ................................. 9, 13 | |
| *Bianchi v. Rylaarsdam*, 334 F.3d 895 (9th Cir. 2003) ..................................................... 11-12 | |
| *Chapman v. Bluffs of Fox Run Homeowners Ass'n, No. 16-cv-489-BAS*(AGS), 2016 U.S. Dist. LEXIS 171537 (S.D. Cal. Dec. 12, 2016) ........................................................ 14 | |
| *City of Escondido v. Emmons*, 139 S. Ct. 500 (2019) ....................................................... 6 | |
| *Cooper v. Ramos*, 704 F.3d 772 (9th Cir. 2012) ........................................................ 12 | |
| *Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009) ........................................................ 6 | |
| *Dang v. Cross*, 422 F.3d 800 (9th Cir. 2005) ........................................................ 13 | |
| *Elder v. Holloway*, 510 U.S. 510 (1994) ........................................................ 6 | |
| *Ewing v. City of Stockton*, 588 F.3d 1218 (9th Cir. 2009) ................................................ 10 | |
| *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) ................................................ 13 | |
| *Grimes v. Alameda Cty. Soc. Servs., No. C 11-02977 WHA*, 2011 U.S. Dist. LEXIS 120259 (N.D. Cal. Oct. 18, 2011) ........................................................ 12 | |
| *Hervey v. Estes*, 65 F.3d 784 (9th Cir. 1995) ............................................................... 10, 11 | |
| *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ........................................ 4-5 | |
| *Ismail v. Cty. of Orange*, 693 F. App'x 507 (9th Cir. 2017) ................................................ 12, 13 | |
| *Ketes v. Koile*, 883 F.3d 1228 (9th Cir. 2018) ............................................................... 9 | |
| *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784 (9th Cir. 2016) ........................................ 5-6 | |
| *Kisela v. Hughes*, 138 S. Ct. 1148 (2018) ............................................................... 6, 7 | |
| *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004) ................................................ 13 | |
| *Mann v. County of San Diego*, 907 F.3d 1154 (9th Cir. 2018) ...................................... 5, 7 | |
| *Marceau v. Balckfeet Hous. Auth.*, 540 F.3d 916 (9th Cir. 2008) .................................... 4 | |
| *Noel v. Hall*, 341 F.3d 1148 (9th Cir. 2003) ............................................................... 11, 12 | |
| *O'Doan v. Sanford*, 991 F.3d 1027 (9th Cir. 2021) ........................................................ 5 | |
| *Parham v. J.R.*, 442 U.S. 584 (1979) ............................................................... 8, 9 | |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

*Pearson v. Callahan*, 555 U.S. 223 (2009) .......................................................................... 5

*Reichle v. Howards*, 566 U.S. 658 (2012) ...................................................................... 6, 7

*Sample v. Monterey Cty. Family & Children Servs., No. C09-01005 HRL*, 2009 U.S. Dist. LEXIS 69260 (N.D. Cal. Aug. 7, 2009) ........................................................ 12

*Sharp v. Cty. of Orange*, 871 F.3d, 901 911-12 (9th Cir. 2017) .................................. 6, 7

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ................................. 5

*Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000) .......................................................... 8

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) ................................................................... 6, 9

**Statutes**

42 United States Code
    Section 1983................................................................................................... 4, 13

California Welfare & Institutions Code
    Section 316 .......................................................................................... 13
    Section 16000.1 .................................................................................... 9
    Section 16001.9 .................................................................................... 9

**Other**

Federal Rule of Civil Procedure
    Rule 8 ..................................................................................... 1, 2, 3, 4
    Rule 9 ................................................................................................ 10
    Rule 12 ........................................................................................... 1, 4

21-cv-1102-JLS-BGS

1    County social worker Diana Shreckengost ("Ms. Shreckengost") moves to dismiss

2 Plaintiffs' Complaint (ECF No. 1) ("Complaint") against her pursuant to Federal Rule of

3 Civil Procedure 8 and 12(b)(6).

4 **I.      INTRODUCTION**

5    County social workers responded to a report of child abuse and neglect concerning

6 Plaintiffs' oldest son, J.P.1.  According to the report, Ms. Pope locked J.P.1, who was

7 five years old at the time, in Plaintiffs' garage all day as punishment.  After assessing the

8 situation at Plaintiffs' home, speaking to witnesses, and consulting with the doctor who

9 examined J.P.1 and concluded his injuries were likely the result of abuse, County social

10 workers placed J.P.1 in protective custody.

11    While J.P.1 was placed with a foster family, Plaintiffs allege County social worker

12 Diana Shreckengost violated their Fourteenth Amendment rights to familial association

13 by directing the foster parents to make a medical appointment for J.P.1 to receive

14 vaccinations without notifying and obtaining consent from Ms. Pope.  This claim fails

15 because Ms. Pope signed a consent form authorizing medical treatment for J.P.1,

16 including immunizations.  Moreover, Ms. Shreckengost is entitled to qualified immunity

17 because there was no controlling legal precedent holding that a social worker who

18 instructs a foster parent of a child in protective custody to make an appointment for the

19 child to receive vaccinations without notifying the parents, violates the parents'

20 constitutional rights.

21    Plaintiffs also allege Ms. Shreckengost violated their Fourteenth Amendment

22 rights when she filed a jurisdiction/disposition report that contained false and misleading

23 statements.  However, Plaintiffs' claim fails because they do not allege that absent these

24 statements, the juvenile court would not have issued the order.  In fact, the disposition

25 order was previously challenged by Ms. Pope and affirmed by the State Court of Appeal.

26 To the extent Plaintiffs claim Ms. Shreckengost's actions caused the children's

27 "continued and prolonged detention," their claim is barred by the *Rooker-Feldman*

28 doctrine.

1

21-cv-1102-JLS-BGS

1    Plaintiffs' claim for punitive damages should also be dismissed because Plaintiffs

2    fail to make a plausible claim that Ms. Shreckengost acted with an evil intent or reckless

3    indifference to Plaintiffs' rights.

4    **II.    SUMMARY OF PLAINTIFFS' FACTUAL ALLEGATIONS**

5    Plaintiffs Mr. Kristoffor Pope and Ms. Ruth Pope ("Plaintiffs") are a married

6    couple and the parents of three children: J.P.1, N.P., and J.P.2.  (Compl. ¶¶ 24-30.)  Mr.

7    Pope is enlisted in the United States Navy.  (*Id.* at ¶ 24.)  J.P.1 was born on June 1, 2014

8    and N.P. was born on June 24, 2017.  (*Id.* at ¶¶ 26-27.)  Plaintiffs then moved to San

9    Diego and J.P.2 was born on June 3, 2019.  (*Id.* at ¶¶ 27-28.) Around the time of J.P.2's

10   birth, Mr. Pope was deployed.  (*Id.* at ¶ 28.)

11   On June 12, 2019, Ms. Pope arranged for a friend to pick up J.P.1 and N.P. and

12   watch them during the day.  (*Id.* at ¶ 33.)  At the time, J.P.1 was five years old and N.P.

13   was about two years old.  (*Id.* at ¶¶ 26-27.)  That morning, Ms. Pope disciplined J.P.1 for

14   waking and teasing N.P. and for being disobedient.  (*Id.* at ¶¶ 34-35.)  Ms. Pope decided

15   that instead of sending J.P.1 to her friend's house, she would punish J.P.1 by keeping him

16   at home in the garage.  (*Id.* at ¶ 36.)

17   Later that afternoon, two La Mesa police officers and two County social workers

18   arrived at Plaintiffs' home to investigate a report that J.P.1 had been locked in the garage

19   all day.  (*Id.* at ¶ 40.)  After conducting an investigation, which included interviewing Ms.

20   Pope and J.P.1 and having a doctor at Balboa Naval Medical Center conduct a detailed

21   forensic examination of J.P.1, N.P., and J.P.2, County social workers informed Ms. Pope

22   they were removing the children from her care and custody and placing them in

23   protective custody.  (*Id.* at ¶¶ 43-71.)

24   On June 17, 2019, County social workers filed a juvenile dependency petition with

25   the juvenile court, reporting that Ms. Pope broke J.P.1's finger, bruised his face and arm,

26   and confined him to the garage all day.  (*Id.* at ¶ 69.)  The juvenile court held a detention

27   hearing on June 18, 2019.  (*Id.* at ¶ 71.)  Prior to the hearing, County social workers

28   submitted a detention report to the juvenile court, which included the findings of their

21-cv-1102-JLS-BGS

1  investigation. (*Id.* at ¶¶ 71, 75.)  At the detention hearing, the juvenile court ordered that

2  Plaintiffs' children should continue to be detained out of Ms. Pope's care.  (*Id.* at ¶ 75.)

3  On July 2, 2019, Plaintiffs allege Ms. Shreckengost met with the family for the

4  first time to discuss the children's return to Plaintiffs' home.  (*Id.* at ¶¶ 81, 82.)  Plaintiffs

5  allege Ms. Shreckengost displayed an "aggressive, condescending, and rude demeanor"

6  at the meeting and later placed J.P.1 with a different foster family to punish Ms. Pope.

7  (*Id.* at ¶¶ 82-83.)

8  Around July 9, 2019, Ms. Shreckengost filed a jurisdiction/disposition report with

9  the juvenile court.  (*Id.* at ¶ 88.)  Plaintiffs allege Ms. Shreckengost directed another

10  social worker not to re-investigate the information provided in the detention report, and

11  instead include the same information in the jurisdiction/disposition report.  (*Id.* at ¶ 87.)

12  Plaintiffs further allege Ms. Shreckengost signed and submitted the report knowing the

13  information was false or misleading.  (*Id.* at ¶¶ 88-89.)

14  At the request of Ms. Pope's attorney, the juvenile court held two special hearings

15  on July 11 and July 18, 2019.  (*Id.* at ¶¶ 93, 94.)  At the July 18, 2019 hearing, the

16  juvenile court ordered that N.P. and J.P.2 be returned to Ms. Pope.  (*Id.* at ¶ 94.)  The

17  court denied Ms. Pope's request that J.P.1 be returned to her at that time.  (*Id.*)

18  Around July 30, 2019, Plaintiffs allege Ms. Shreckengost asked J.P.1's foster

19  parent to take him to a doctor's appointment where he received a shot, and to not worry

20  about informing Ms. Pope.  (*Id.* at ¶¶ 97-98.)

21  After a contested jurisdiction/disposition hearing on or about August 26, 2019, the

22  juvenile court ordered that J.P.1 be removed from Plaintiffs' custody and placed in a

23  relative's home. (RJN Ex. A, California Court of Appeal opinion, at 4.)  The juvenile

24  court ordered J.P.1's removal because it found that a substantial risk existed that J.P.1

25  would suffer non-accidental serious physical harm in Plaintiffs' care.  (*Id.* at 4.)  Ms.

26  Pope appealed the juvenile court's order to the State Court of Appeal.  (RJN Ex. A.)  On

27  February 19, 2020, the Court of Appeal affirmed the juvenile court's removal order,

28  holding that substantial evidence supported the decision.  (*Id.* at 7-10.)

21-cv-1102-JLS-BGS

1    On November 17, 2019, Mr. Pope returned from deployment.  (Compl. at ¶ 100.)

2    J.P.1 was returned to Plaintiffs' home around March 14, 2020, and the juvenile court's

3    jurisdiction over J.P.1 was terminated on August 11, 2020.  (*Id.* at ¶ 103.)

4    Plaintiffs assert two claims against Ms. Shreckengost under 42 U.S.C. § 1983: (1)

5    Ms. Shreckengost violated parent Plaintiffs' Fourteenth Amendment right to make

6    medical decisions for J.P.1 when she instructed J.P.1's foster mother to have him

7    vaccinated without parental notice or consent and (2) Ms. Shreckengost violated

8    Plaintiffs' Fourteenth Amendment due process rights to be free from judicial deception

9    when she signed and submitted a jurisdiction/disposition report that contained false or

10   misleading statements.

## III.   ARGUMENT

### A.   The Court Should Dismiss Plaintiffs' § 1983 Claims against Ms. Shreckengost

14   Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper when a

15   complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to

16   relief that is plausible on its face,'" such that it fails to comport with the pleading

17   requirements set forth in Rule 8.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

18   *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although Rule 8 does not require

19   detailed factual allegations, "a plaintiff's obligation to provide the grounds of his

20   entitlement to relief requires more than labels and conclusions, and a formulaic recitation

21   of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*,

22   550 U.S. at 555).  This standard asks for "more than a sheer possibility that a defendant

23   acted unlawfully."  *Id.*

24   In reviewing a challenged complaint, the court accepts all allegations of material

25   fact as true and construes these facts in the light most favorable to the non-moving party.

26   *Marceau v. Balckfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008).  However, the court

27   is not required "to accept as true allegations that are merely conclusory, unwarranted

28   deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d

21-cv-1102-JLS-BGS

1    1049, 1056-57 (9th Cir. 2008).  Nor is the court required to accept as true allegations

2    "that contradict matters properly subject to judicial notice." *Sprewell v. Golden State*

3    *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

4                    1.     Ms. Shreckengost is Entitled to Qualified Immunity for Plaintiffs'

5                          Claim that J.P.1 was Vaccinated Without Parental Notice or Consent.

6           Plaintiffs allege Ms. Shreckengost "directed that J.P.1 be administered one or more

7    vaccinations" on or about July 29, 2019, without informing Ms. Pope and obtaining Ms.

8    Pope's consent.  (*See* Compl. ¶¶ 98, 119.)  Plaintiffs contend that Ms. Shreckengost's

9    actions caused a violation of Plaintiffs' Fourteenth Amendment rights to make medical

10   decisions for their children and, as a result of the decision in *Mann v. County of San*

11   *Diego*, 907 F.3d 1154 (9th Cir. 2018), a reasonable social worker in Ms. Shreckengost's

12   position should have known the actions were unlawful.  (*See* Compl. ¶¶ 119, 120.)

13          The doctrine of qualified immunity "balances two important interests—the need to

14   hold public officials accountable when they exercise power irresponsibly and the need to

15   shield officials from harassment, distraction, and liability when they perform their duties

16   reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity "gives

17   government officials breathing room to make reasonable but mistaken judgments," and

18   "protects 'all but the plainly incompetent or those who knowingly violate the law.'"

19   *Ashcroft v. al-Kidd,* 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335,

20   341 (1986)).

21          In evaluating a grant of qualified immunity, a court considers whether (1) the

22   public official's conduct violated a constitutional right and (2) whether the right was

23   clearly established at the time of the alleged misconduct. *O'Doan v. Sanford*, 991 F.3d

24   1027, 1036 (9th Cir. 2021).  A court may exercise its discretion to address either prong

25   first, and if the answer to either is "no," then the public official cannot be held liable for

26   damages. *Id.* (citing *Pearson*, 555 U.S. at 236); *see also Kirkpatrick v. Cty. of Washoe*,

27   843 F.3d 784, 788, 792-93 (9th Cir. 2016) (holding that even though there was a question

28   of fact as to whether social workers violated plaintiff's rights, the workers were entitled

21-cv-1102-JLS-BGS

1  to qualified immunity because the law at the time did not clearly establish the

2  unconstitutionality of their conduct).

3       Whether a constitutional right is clearly established is purely a question of law.

4  *Elder v. Holloway*, 510 U.S. 510, 511 (1994).  First, "the right allegedly violated must be

5  defined at the appropriate level of specificity before a court can determine if it was

6  clearly established." *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009).  A court

7  must define the right at issue in light of the specific context of the case and "'not . . . at a

8  high level of generality.'" *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per

9  curiam) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam); *see also*

10  *City and Cty. of S.F. v. Sheehan*, 135 S. Ct. 1765, 1775-76 (2015) ("The Supreme Court

11  has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly

12  established law at a high level of generality.").  Otherwise, "plaintiffs would be able to

13  convert the rule on qualified immunity . . . into a rule of virtually unqualified liability

14  simply by alleging violation of extremely abstract rights." *White v. Pauly*, 137 S. Ct.

15  548, 552 (2017).

16       Once the right at issue is defined, a court must ask whether it would have been

17  sufficiently clear to a reasonable official that the alleged conduct was unlawful in the

18  situation he confronted.  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (quotations

19  omitted).  "In other words, existing precedent must have placed the statutory or

20  constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012)

21  (quotations omitted); *see also Kisela*, 138 S. Ct. at 1153 ("officers are entitled to

22  qualified immunity unless existing precedent squarely governs the specific facts at

23  issue"); *Sharp v. Cty. of Orange*, 871 F.3d, 901 911-12 (9th Cir. 2017) (emphasizing that

24  cases of "obvious" constitutional misconduct, where an exception to the specific-case

25  requirement applies, are "rare").  "[T]he prior precedent must be 'controlling'—from the

26  Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts

27  outside the relevant jurisdiction." *Sharp*, 871 F.3d at 911.

28  / / /

21-cv-1102-JLS-BGS

1    Here, Ms. Shreckengost did not violate Plaintiffs' Fourteenth Amendment rights

2    when she asked J.P.1's foster parent to take him to a medical appointment where he

3    received scheduled immunizations because Ms. Pope signed a "Consent for Examination

4    and Treatment" form for J.P.1 when he was removed from her care and placed at

5    Polinsky Children's Center.  *See* RJN Ex. D, consent form dated June 13, 2019.  The

6    form authorized medical and other remedial care—including immunizations—to be given

7    to J.P.1 while he was in a facility operated by the County or in a foster home.  *Id.*

8    Moreover, the law was not clearly established because no precedent at the time of

9    the alleged violation squarely governed the specific facts at issue and placed the

10   constitutional question "beyond debate."  *See Reichle*, 566 U.S. at 664; *Kisela*, 138 S. Ct.

11   at 1153.  The specific right at issue here—a parent's right to notice and consent for a

12   vaccination administered to their child when a juvenile court has ordered that the child be

13   detained from the parent's care—was not clearly established by law.

14   Plaintiffs assert that *Mann v. County of San Diego* put Ms. Shreckengost on notice

15   that her actions were allegedly unlawful, but Plaintiffs' factual allegations are

16   distinguishable from those in *Mann*.  In *Mann*, the Ninth Circuit held the County violated

17   parents' Fourteenth Amendment rights when it performed "invasive medical

18   examinations, including gynecological and rectal exams," at Polinsky Children's Center

19   without notifying the parents and without obtaining either parental consent or a court

20   order.  907 F.3d 1154, 1162 (9th Cir. 2018).  The examinations at issue in *Mann* were

21   conducted upon a child's admission to Polinsky and were performed to assess the child's

22   health concerns and to identify signs of abuse.  *Id.*  The consent form signed by the

23   parents in *Mann* authorized treatment recommended by a licensed physician, but did **not**

24   mention or authorize the examinations at Polinsky.  *Id.* at 1158.

25   Here, Plaintiffs do not challenge an "invasive medical examination" at Polinsky;

26   Plaintiffs challenge a medical appointment where J.P.1 received immunizations.  Unlike

27   the dual-purpose Polinsky exams, the administration of a vaccine has no investigatory

28   purpose.  *See Mann*, 907 F.3d at 1161-62.  Moreover, the consent form signed by Ms.

7

1 Pope prior to the appointment authorized future medical treatment, including

2 immunizations.  *See* RJN Ex. D.  Thus, *Mann* could not have put Ms. Shreckengost on

3 notice that instructing a foster parent to make a medical appointment for a child to

4 receive immunizations would violate the Fourteenth Amendment, especially here, where

5 the child's parent signed a consent form authorizing future medical treatment.

6 Plaintiffs' allegations are also distinct from other cases governing parents'

7 decision-making authority over their child's medical care.  In *Wallis*, the plaintiffs'

8 children received "invasive vaginal and anal medical examinations," after they were

9 removed from their parents' care, to identify signs of abuse.  *Wallis v. Spencer*, 202 F.3d

10 1126, 1136 (9th Cir. 2000).  The Ninth Circuit held that the "Constitution assures parents

11 that, in the absence of parental consent, [physical examinations] of their child may not be

12 undertaken for investigative purposes at the behest of state officials unless a judicial

13 officer has determined, upon notice to the parents, and an opportunity to be heard, that

14 grounds for such an examination exist and that the administration of the procedure is

15 reasonable under all the circumstances."  *Id.* at 1141.  In *Wallis*, the exams were

16 performed prior to a hearing in juvenile court and without the parents' consent.  *Id.*  Here,

17 J.P.1's alleged vaccination occurred **after** the detention hearing where the juvenile court

18 ordered that J.P.1 remain out of Ms. Pope's care and after Ms. Pope signed a consent

19 form authorizing immunizations.  *See* Compl. ¶¶ 75, 97; RJN Ex. D.  Further, unlike an

20 invasive vaginal and anal medical examination, a vaccine is a preventative health

21 measure that does not detect signs of abuse.

22 In *Parham v. J.R.*, the Supreme Court balanced the rights of parents who decided

23 their children should be institutionalized at a state mental hospital with the rights of the

24 children.  *Parham v. J.R.*, 442 U.S. 584, 601-02 (1979).  The Court stated that its

25 jurisprudence recognized "broad parental authority over minor children," but that a child

26 has a liberty interest in not being confined unnecessarily for medical treatment.  *Id.* at

27 600, 602.  The Court also noted that "a state is not without constitutional control over

28 parental discretion in dealing with children when their physical or mental health is

1   jeopardized." *Id.* at 602.  The Court held that, absent a finding of neglect or abuse,

2   parents retained a substantial role in the decision to commit their child, but a physician's

3   independent examination and medical judgment was required to protect the child's rights.

4   *Id.* at 604.

5      Here, unlike the children in *Parham*, at the time of the alleged vaccination, J.P.1

6   was adjudged a dependent of the juvenile court based on a finding of abuse by Ms. Pope.

7   *See* Compl. ¶¶ 75, 96-98.  And unlike children who are in the custody of their parents, the

8   County has a statutory duty to care for children in foster care.  *See* Welf. & Inst. Code §

9   16000.1(a)(1) ("The state has a duty to care for and protect the children that the state

10  places into foster care, and as a matter of public policy, the state assumes an obligation of

11  the highest order to ensure the safety of children in foster care.").  Although Plaintiffs

12  retained some of their parental authority, J.P.1, as a child in foster care, had the right "[t]o

13  access and receive medical . . . care, with reasonable promptness that meets the needs of

14  the child." *See* Welf. & Inst. Code § 16001.9(a)(22).  Therefore, no controlling legal

15  precedent put Ms. Shreckengost on notice that directing a foster parent to make a medical

16  appointment for a child in protective custody to receive one or more vaccinations without

17  notifying and obtaining consent from the child's parent was unlawful.  *See Ziglar*, 137 S.

18  Ct. at 1867.

19          2.      Plaintiffs Fail to State a Claim against Ms. Shreckengost for Judicial
                    Deception.

20      Plaintiffs allege that Ms. Shreckengost acted to "deliberately or recklessly present

21  false statements and/or omit and/or actively suppress known exculpatory material" in the

22  jurisdiction/disposition report filed with the juvenile court, in violation of Plaintiffs' due

23  process rights.  (*See* Compl. ¶¶ 87, 88, 126, 130, 133.)

24      To successfully allege a violation of the constitutional right to be free from judicial

25  deception, Plaintiffs must make out a claim that includes (1) a misrepresentation or

26  omission (2) made deliberately or with a reckless disregard for the truth, and (3) material

27  to the judicial decision.  *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1147 (9th Cir.

28  2021); *Ketes v. Koile,* 883 F.3d 1228, 1240 (9th Cir. 2018).  In other words, Plaintiffs

9

1    must make a substantial showing that the challenged report contained misrepresentations

2    or omissions that were material because probable cause could not be established without

3    them.  *Hervey v. Estes*, 65 F.3d 784, 788-89 (9th Cir. 1995) (holding that a failure to

4    point out inconsistencies to the court did not amount to "deliberate falsity or reckless

5    disregard of the truth of the statements in the affidavit"); *see also Beltran v. Santa Clara*

6    *Cty.*, 389 F. App'x 679, 681 (9th Cir. 2010) (holding that nine alleged misrepresentations

7    in a protective custody warrant was insufficient to state a judicial deception claim

8    because the falsities did not negate probable cause).

9          A claim for judicial deception may not be based on "omissions or misstatements

10   resulting from negligence or good faith mistakes" or from "erroneous assumptions" made

11   on the basis of the information received.  *Ewing v. City of Stockton*, 588 F.3d 1218, 1224

12   (9th Cir. 2009) (quoting *United States v. Smith*, 588 F.2d 737, 740 (9th Cir. 1978).  In

13   fact, the Ninth Circuit recently reaffirmed this legal principle and applied the heightened

14   pleading standard of Rule 9(b) to a judicial deception claim against social workers for

15   statements made to the juvenile court.  *Benavidez,* 993 F.3d at 1148-49.  Under this

16   standard, a plaintiff must plead with particularity the circumstances constituting fraud,

17   including what is false or misleading about a statement.  Fed. R. Civ. P. 9(b); *United*

18   *States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016).  A heightened

19   pleading standard is appropriate because allegations of false representations are easily

20   made.  *See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*,

21   631 F.3d 436, 442 (9th Cir. 2011) (fraud claims are governed by Rule 9(b) to "ensure that

22   such fraught allegations are not lightly leveled.")

23         Here, Plaintiffs allege Ms. Shreckengost submitted a jurisdiction/disposition report

24   to the juvenile court that contained the same false statements that were previously

25   submitted in the detention report.  (*See* Compl. ¶¶ 71, 87, 88.)  According to Plaintiffs,

26   the reports contained false information about what J.P.1 and Ms. Pope said about how

27   J.P.1 sustained his injuries, the conditions of the garage J.P.1 was in on June 12, 2019,

28   and Plaintiffs' use of physical punishment.  (*Id.* at ¶ 71.)

10

1    Even if this Court set aside the statements and evidence that Plaintiffs claim are

2    false, the jurisdiction/disposition report still contained enough evidence to support the

3    court's decision that J.P.1 remain out of Plaintiffs' care.  *See* RJN Ex. A at 8*;* RJN Ex. C,

4    Detention Report filed June 18, 2019 at 133-134, 140-142, 144; *Hervey*, 65 F.3d at 790

5    (reversing grant of summary judgment on judicial deception claim where "[t]he falsely

6    included facts constituted the entire substance of the affidavit"); *Beltran*, 389 F. App'x at

7    681 (finding no judicial deception claim where alleged falsities did not negate probable

8    cause).  In fact, the State Court of Appeal affirmed the juvenile court's disposition order

9    relying on *other* statements and evidence that Plaintiffs do not allege was fabricated to

10   find that Ms. Pope's conduct posed a "substantial risk of harm to J.P.[1] and that such a

11   risk could only be obviated by removing him from this mother's custody."  *See* RJN Ex.

12   A at 7-10.  The *other* statements and evidence that the State Court of Appeal relied on

13   include:  a child abuse expert's conclusion that the "extensive patterned injuries" on

14   J.P.1's body were consistent with "a history of being struck multiple times on multiple

15   parts of the body"; that Ms. Pope repeatedly stated J.P.1 is "malicious and does things to

16   stress me out"; and that Ms. Pope acknowledged that she needed to change her parenting

17   and discipline methods.  *Id*.  Thus, the statements and evidence that Plaintiffs' claim was

18   fabricated were not material to the juvenile court's decision to order the children remain

19   out of their parents' care.  The juvenile court had enough evidence from the forensic

20   examinations of the children and statements made by Ms. Pope to remove and detain the

21   children.  Accordingly, Plaintiffs' judicial deception claims must fail.

22       Moreover, to the extent Plaintiffs' claim that Ms. Shreckengost's statements to the

23   juvenile court resulted in the children's "continued and prolonged detention," Compl.

24   ¶ 132, it is barred by the *Rooker-Feldman* doctrine because Plaintiffs are asking this

25   Court to second-guess the juvenile court's orders.  "If a federal plaintiff asserts as a legal

26   wrong an allegedly erroneous decision by a state court, and seeks relief from a state court

27   judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in

28   federal district court."  *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003); *see also*

21-cv-1102-JLS-BGS

1   *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) ("*Rooker-Feldman* is a

2   powerful doctrine that prevents federal courts from second-guessing state court

3   decisions.")  The doctrine "bars not only an action explicitly styled as a direct appeal, but

4   also over the 'de facto equivalent' of such an appeal."  *Cooper v. Ramos*, 704 F.3d 772,

5   777 (9th Cir. 2012); *see also Ismail v. Cty. of Orange*, 693 F. App'x 507, 510 (9th Cir.

6   2017) (affirming dismissal of plaintiff's constitutional claims against social workers

7   because they were inextricably intertwined with the juvenile court's rulings that relied in

8   part on the social workers' reports and testimony).  And it is immaterial that Plaintiffs

9   seek damages rather than injunctive relief.  *See Grimes v. Alameda Cty. Soc. Servs.*, No.

10   C 11-02977 WHA, 2011 U.S. Dist. LEXIS 120259, at *8 (N.D. Cal. Oct. 18, 2011)

11   ("Even if plaintiff were to abandon his request for the return of his children and instead

12   pursue only money damages, his claims still would require review of the relevant state-

13   court decisions.  Such review is barred."); *Sample v. Monterey Cty. Family & Children*

14   *Servs.*, No. C09-01005 HRL, 2009 U.S. Dist. LEXIS 69260, at *8 (N.D. Cal. Aug. 7,

15   2009) ("Although [plaintiff] asks for monetary damages, she would only receive a

16   damage award if this court determined that the Dependency Court's decisions pertaining

17   to the custody of her children—including any review or authorization of defendants'

18   actions—were in error.").

19        Here, the juvenile court heard from Plaintiffs at the detention hearing, the special

20   hearings, and the jurisdiction/disposition hearing, and at each hearing ordered that J.P.1

21   continue to remain out of Plaintiffs' care.  *See* Compl. ¶¶ 75, 93, 96.  In fact, the Court of

22   Appeal notes that Ms. Pope "never requested custody of J.P.[1]" at any of these hearings.

23   *See* RJN Ex. A at 6-7.  Instead, Ms. Pope stated she wanted to "transition" J.P.1 "back to

24   a home where I feel like I can handle him and he can feel like he can be home and not

25   under unnecessary pressure."  *See id.* at 6.  Plaintiffs cannot now ask this Court to review

26   the juvenile court and State Court of Appeal decisions that were based, in part, on County

27   social workers' reports.  *See Noel*, 341 F.3d at 1164; *Ismail*, 693 F. App'x at 510.

28   / / /

21-cv-1102-JLS-BGS

1   Although there is an exception to the jurisdictional bar of *Rooker-Feldman* for

2   allegations of extrinsic fraud, it does not apply here.  *See Kougasian v. TMSL, Inc.*, 359

3   F.3d 1136, 1140 (9th Cir. 2004) ("Extrinsic fraud is conduct which prevents a party from

4   presenting his claim in court.")  In *Benavidez*, the Ninth Circuit held that the exception

5   applied because the plaintiffs claimed that the juvenile court ordered medical exams of

6   the plaintiffs' children based on social workers' false representations that reasonable

7   efforts had been made to notify the plaintiffs about the exams.  993 F.3d at 1143-44.   As

8   a result, the plaintiffs alleged that they did not become aware of the exams until after the

9   exams took place and were precluded from being heard on the juvenile court's orders.  *Id.*

10   Here, Plaintiffs learned of the purportedly false information in the

11   jurisdiction/disposition report—which allegedly repeated the information in the detention

12   report, at Ms. Shreckengost's instruction—on or around June 18, 2019.  *See* Compl. ¶ 75.

13   Unlike in *Benavidez*, where the plaintiffs were not heard on the juvenile court's orders,

14   Plaintiffs here were not prevented from presenting evidence to challenge any false

15   statements at the detention hearing or at subsequent hearings.  *See Ismail*, 693 F. App'x at

16   510.  Throughout the juvenile dependency proceedings, Plaintiffs were represented by

17   counsel and had the opportunity to be heard.  *See* Cal. Welf. & Inst. Code § 316.  And

18   Plaintiffs exercised their right to appeal the juvenile court's jurisdiction order in the Court

19   of Appeal.  *See* RJN Ex. A.  Thus, *Rooker-Feldman* bars Plaintiffs' claim insofar as it

20   challenges the state court orders.

21   **B.     Plaintiffs Fail to State a Claim for Punitive Damages Against Ms.**
       **Shreckengost**
22

23   Plaintiffs' request for punitive damages against Ms. Shreckengost should be

24   dismissed.  (*See* Compl. ¶¶ 124, 138.)  "[P]unitive damages may be assessed under 42

25   U.S.C. § 1983 when a defendant's conduct is shown to be motivated by evil motive or

26   intent, or if it involves reckless or callous indifference to the federally protected rights of

27   others."  *Fair Housing of Marin v. Combs*, 285 F.3d 899, 916 (9th Cir. 2002) (internal

28   citations omitted); *see also Dang v. Cross*, 422 F.3d 800, 807-09 (9th Cir. 2005).

13

21-cv-1102-JLS-BGS

1    Plaintiffs fail to state a claim for punitive damages because they merely make

2   formulaic recitations of the punitive damages standard by alleging Ms. Shreckengost

3   "acted intentionally and/or with a conscious and callous disregard for Plaintiffs'

4   constitutional rights."  *See* Compl. ¶¶ 124, 138; *Twombly*, 550 U.S. at 555.  Plaintiffs

5   allege that Ms. Shreckengost was rude to Ms. Pope at a meeting and arranged for J.P.1 to

6   be placed with a different foster family to "punish" Ms. Pope.  *Id.* at ¶¶ 82, 83.  However,

7   these factual allegations do not support Plaintiffs' assertions that Ms. "Shreckengost's

8   conduct had become retaliatory and punitive," and Ms. Shreckengost "openly used her

9   control over J.P.1 and his placement as a punitive tool to work out her angst on Ruth."

10  *Id.* at ¶¶ 92, 95.  Plaintiffs therefore fail to make a plausible claim that Ms. Shreckengost

11  acted with an evil intent or reckless indifference to Plaintiffs' rights.  *See Chapman v.*

12  *Bluffs of Fox Run Homeowners Ass'n*, No. 16-cv-489-BAS(AGS), 2016 U.S. Dist.

13  LEXIS 171537, at *9 (S.D. Cal. Dec. 12, 2016) (rejecting a claim for punitive damages

14  because plaintiffs "allege little more than legal conclusions and a formulaic recitation of

15  the 'intentional and reckless' standard for punitive damages.").  Because Plaintiffs have

16  not demonstrated any entitlement to punitive damages arising out of Ms. Shreckengost's

17  conduct, their punitive damages claim should be dismissed.

18  **IV.    CONCLUSION**

19      For the reasons set forth above, County social worker Diana Shreckengost requests

20  that this Court dismiss Plaintiffs' Complaint against her.

21

22  DATED:  September 22, 2021   OFFICE OF COUNTY COUNSEL

23                  By:  s/Kate D. Jones, Senior Deputy
24                      Talia V. Edelman, Deputy
                    Attorneys for Defendant Diana Shreckengost
25                  E-mail: kate.jones@sdcounty.ca.gov;
                    talia.edelman@sdcounty.ca.gov
26

27

28

21-cv-1102-JLS-BGS