# EXHIBIT A

Filed 2/19/20

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

CoCo: 19-00204
HHSA: 0Q21510
Hrg:  C. ADJ/Dispo
Attys:  HLT/PPG

### DIVISION ONE

### STATE OF CALIFORNIA

In re J.P. et al., Persons Coming Under the Juvenile Court Law.

SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,

        Plaintiff and Respondent,

        v.

R.P.,

        Defendant and Appellant.

D076505

(Super. Ct. Nos. EJ4410A-C)

APPEAL from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

EXHIBIT A

R.P. (Mother) appeals from the juvenile court's disposition order removing her five-year old son, J.P.  Mother contends substantial evidence does not support the court's findings that there would be substantial danger to J.P. if not removed from her custody. She also claims the court erred in failing to consider less drastic measures before removing the child and by failing to make required findings.  Alternatively, she asserts the court abused its discretion when it denied her request for unsupervised visitation.  We find no error and affirm the disposition order.

FACTUAL AND PROCEDURAL BACKGROUND

Family friends adopted Mother at age five.  Her adoptive mother disciplined her " 'southern style' " with extension cords and wire hangers.  Mother married K.P. (Father) in 2013.  The couple experienced difficulty early in their marriage with Father verbally abusing Mother.  The couple worked with Military Family Advocacy and a Chaplain to improve their relationship.  Mother claims they overcame the difficulty and "have a very good marriage."  Mother gave birth to J.P. in 2014 and two male siblings in 2017 and 2019 (collectively, the children).

In early June 2019,[1] a child abuse hotline received a referral alleging that Mother had confined J.P. to the garage as punishment for waking up his younger brother and " 'whooped' " J.P. for smirking at her.  At the time, Father was deployed until December. During a child welfare check that afternoon, law enforcement found J.P. in the garage. J.P. told officers that he ate breakfast and lunch in the garage and was given one bottle of

---

[1]    All undesignated date references are to 2019.

2
EXHIBIT A

water for the entire day.  An officer described the temperature in the garage as "moderate and not extremely hot."

J.P. stated that his mom had punched his finger, head, and leg.  He described receiving " 'a butt whoopin' " from his parents when he gets in trouble, stating Mother used a phone cord and Father used a cord from a phone charger.  Mother repeatedly stated that J.P. was "malicious" and did "things to stress [her] out."

J.P. suffered a fractured finger.  He also had bruising in multiple areas and abrasions on his abdomen that Mother could not explain.  A child abuse expert examined J.P. and found "extensive patterned injuries" consistent with "a history of being struck multiple times on multiple parts of the body."  The expert also noted that abdomen injuries in children were unusual and particularly indicative of inflicted trauma.  The expert opined that confining J.P. to a hot garage for 10 or more hours, with only one bottle of water, was cruel and consistent with parental neglect.

The San Diego County Health and Human Services Agency (the Agency) obtained a warrant to remove the children from their parents' custody.  It placed J.P. in a foster home and his younger siblings in Polinsky Children's Center (Polinsky).  The Agency filed a dependency petition under Welfare and Institutions Code section 300, subdivision (a) for J.P. alleging excessive discipline with injuries, and petitions under subdivision (j) for his siblings alleging they were subject to suffering a similar risk as their older brother.[2]

---

[2]     Undesignated statutory references are to the Welfare and Institutions Code.

EXHIBIT A

At the detention hearing, the court found a prima facie showing had been made that the children were persons described by section 300 and ordered them detained at Polinsky or a licensed foster home with liberal supervised visitation for Mother.  The court gave the Agency discretion to place the younger siblings with Mother finding that J.P. appeared to be "a particular targeted child."  In July, the court ordered the two younger siblings detained with Mother on the condition that a relative remain living in her home with her and the children.  In August, J.P. transitioned from a foster home into the approved relative home of his paternal cousins.

The court held the contested jurisdictional and dispositional hearing in late August.  The court found true the allegation that a substantial risk existed that J.P. would suffer nonaccidental serious physical harm and that his siblings were subject to suffering a similar risk as their older brother.  The court declared the children to be dependent children under section 360, subdivision (d).  It removed custody of J.P. from the parents and placed him in a relative's home.  The court ordered supervised visits with J.P. and gave the Agency discretion to allow unsupervised visitation.  The court placed the younger siblings with their parents.  Finally, the court ordered reunification services to both parents.

DISCUSSION

I.  *REMOVAL*

Mother contends the juvenile court erred in removing J.P. without evidence of any current substantial clear and convincing evidence of future risk of excessive discipline or detriment.  She also argues that the court erred in failing to consider less drastic measures

4

EXHIBIT A

before removing J.P. and by not making specific findings regarding what, if any, reasonable alternatives it considered before deciding to remove J.P.  The Agency responds that Mother forfeited these issues.  Alternatively, it argues that substantial evidence supports the juvenile court's disposition order.  Mother responds that challenges to the sufficiency of evidence supporting an order or judgment are an exception to the rule that issues not raised in the trial court are generally forfeited.

"A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court.  [Citations.]  Forfeiture . . . applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221-222.)  "[T]he failure to object to a disposition order on a specific ground generally forfeits a parent's right to pursue that issue on appeal . . . ." (*In re Anthony Q.* (2016) 5 Cal.App.5th 336, 345.)  A parent in a contested dependency proceeding, however, "is not required to object to the agency's failure to carry its burden of proof." (*In re Javier G.* (2006) 137 Cal.App.4th 453, 464.)  Rather, a " ' "contention that a judgment is not supported by substantial evidence . . . is an obvious exception to the [forfeiture] rule." ' " (*In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1560; see *In re R.V.* (2012) 208 Cal.App.4th 837, 848 [parent's challenge to removal order "on the ground of insufficient evidence . . . is not forfeited even if not raised in the juvenile court"].)

Here, Mother's failure to ask the juvenile court to clarify its implied finding that there were no reasonable alternatives to removal or request specific findings regarding reasonable alternatives to removal forfeited these issues on appeal.  Any deficiency in the

EXHIBIT A

Agency's reports or the juvenile court's findings regarding removal or reasonable alternatives to removal could have readily been cured by an objection from Mother. (*In re E.A.* (2012) 209 Cal.App.4th 787, 791 [Purported failure to make an express finding is the sort of "alleged defect that could have been easily cured, if raised in a timely fashion."].)

To the extent Mother challenges the juvenile court's order removing J.P. from her custody, the record shows that Mother never requested custody of J.P.  The social worker noted in the jurisdiction/disposition report Mother's statement that she wanted to "transition" J.P. "back to a home where I feel like I can handle him and he can feel like he can be home and not under unnecessary pressure."  The case plan attached to the July 10 jurisdiction/disposition report recommended supervised visitation with the children. Implicit in this recommendation was that Mother would not have custody of the children.

The subsequent addendum reports recommended supervised visitation with J.P.  In a report dated the day of the jurisdictional and dispositional hearing, the Agency recommended that J.P.'s younger siblings be declared dependents, but returned home.  As to J.P., the social worker specifically noted that Mother "stated that she is not asking for [J.P.] to return home yet but would like more time to practice the skills she is using."  The Agency supported this and requested that Mother have more supervised time with J.P. "one-on-one" to help Mother "further practice the skills she is learning."

At the jurisdictional and dispositional hearing, the Agency requested that the younger siblings be placed with Mother and J.P. placed with a relative, noting that while Mother had made "great strides" in addressing protective issues, it wanted "to make sure

6

EXHIBIT A

that the transition to return [J.P.] home is handled with care, so [M]other and [J.P.] can both reunify successfully."  Mother's counsel argued that Mother desired structured unsupervised visitation with J.P. in the community.  Mother's counsel never argued against J.P.'s removal and placement with a relative.

Thus, while Mother preserved her right to challenge the sufficiency of the evidence supporting the removal order, she did not argue for J.P.'s return below.  (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592 [arguments raised for the first time on appeal are deemed forfeited].)  In any event, substantial evidence supported the court's removal order.

A dependent child may not be taken from the physical custody of his or her parents "unless the juvenile court finds clear and convincing evidence . . . [¶] . . . [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody."  (§ 361, subd. (c)(1).)  "A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent.  [Citation.]  'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate.  The focus of the statute is on averting harm to the child.'  [Citation.]  The [juvenile] court may consider a parent's past conduct as well as present circumstances."  (*In re N.M.* (2011) 197 Cal.App.4th 159, 169-170.)

A disposition order removing a child is reviewed for substantial evidence keeping in mind that the juvenile court was required to make its order based on a finding of clear and convincing evidence.  (*In re Noe F.* (2013) 213 Cal.App.4th 358, 367.)  In applying the substantial evidence standard of review, "our power begins and ends with a determination as to whether substantial evidence exists, contradicted or uncontradicted, supporting the dependency court's determinations.  We review the evidence in the light most favorable to the dependency court's findings and draw all reasonable inferences in support of those findings.  [Citations.]  Thus, we do not consider whether there is evidence from which the dependency court could have drawn a different conclusion but whether there is substantial evidence to support the conclusion that the court did draw." (*Id.* at p. 366.)

The Agency detained J.P. because of Mother's excessive discipline.  A child abuse expert concluded that the "extensive patterned injuries" on J.P.'s body were consistent with "a history of being struck multiple times on multiple parts of the body."  Mother repeatedly stated that J.P. is " 'malicious and does things to stress me out.' "  Mother acknowledged early in the proceeding that she needed to change her parenting and discipline methods.  To start this change, Mother participated in anger management classes, parenting classes, and engaged in individual therapy.

Although Mother eventually had J.P.'s two younger siblings returned to her custody, their return was conditioned on a relative living in her home with her and the younger siblings.  Accordingly, Mother had the paternal grandmother or another relative or friend assisting her with their care.  The Agency expressed concern that without

8

EXHIBIT A

ongoing support Mother "will again become overwhelmed and not have the coping skills to make safe choices for her children.  The Agency believes it will take some time to have [Mother's] default discipline to be a safe method, free of marks or bruises."

J.P. was diagnosed with an adjustment disorder, with mixed disturbance of emotions and conduct.  J.P. also displayed some "anger and defiant behaviors" in his relative placement.  Mother agreed that J.P. needed more than eight weeks of therapy " 'to be able to unpack the trauma of everything.' "  Critically, Mother has not yet started child abuse group treatment.  The social worker noted that "[w]hile [Mother] appears to be changing her thoughts on what is appropriate discipline, she continues to rely on others to help her see another perspective.  The Agency appreciates this as a step towards helping [Mother] parent successfully in the future, however, in an effort to set [Mother] up for success, the Agency believes it is imperative to not move too quickly and for these parenting changes to be demonstrated over time."

Mother's articulate statements to the social worker show her motivation to change and how she has changed her parenting.  The juvenile court commented that Mother was "doing a great job."  We concur and commend Mother's efforts to address her excess discipline of J.P. and become a better parent.  However, at the time of the disposition hearing Mother had yet to parent J.P.'s younger siblings without help from a relative. The juvenile court could have reasonably concluded that Mother had not had enough time engaging  her new parenting skills to demonstrate they had become not only a permanent part of her parenting repertoire, but also had replaced violence, solitary confinement, and other abuse as disciplinary measures.  Based on the totality of the evidence, the juvenile

9

EXHIBIT A

court reasonably found that Mother's conduct posed a substantial continuing risk of harm to J.P. and that such risk could only be obviated by removing him from Mother's custody.

## II. *VISITATION*

Mother notes that the juvenile court denied her request for unsupervised visits with J.P. without explanation, but gave the Agency discretion to allow unsupervised visitation and overnights with either parents. She claims that the court abused its discretion because unsupervised visits between her and J.P. would not have jeopardized his safety. The Agency contends that Mother failed to show that the court abused its discretion by maintaining Mother on supervised visitation with J.P.[3]

To promote reunification, visitation must be as frequent as possible, consistent with the well-being of the child. (§ 362.1, subd. (a)(1)(A); *In re Alvin R.* (2003) 108 Cal.App.4th 962, 972.) "While visitation is a key element of reunification, the court must focus on the best interests of the child[] 'and on the elimination of conditions which led to the juvenile court's finding that the child has suffered, or is at risk of suffering, harm specified in section 300.' " (*In re Julie M.* (1999) 69 Cal.App.4th 41, 50.) "[T]he court must define the rights of the parties to visitation. The definition of such a right

---

[3] The Agency also argues that Mother failed to demonstrate that the court's visitation order amounted to an unlawful delegation of judicial authority. Mother did not argue this issue in her opening brief; accordingly, the issue is forfeited. (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 707, fn. 4 [appellate review of issue forfeited if not raised in opening brief].)

EXHIBIT A

necessarily involves a balancing of the interests of the parent in visitation with the best

interests of the child.  In balancing these interests, the court in the exercise of its judicial

discretion should determine whether there should be any right to visitation and, if so, the

frequency and length of visitation.  The court may, of course, impose any other

conditions or requirements to further define the right to visitation in light of the particular

circumstances of the case before it."  (*In re Jennifer G.* (1990) 221 Cal.App.3d 752,

757.)[4]

We review a visitation order for an abuse of discretion.  (*In re Robert L.* (1993) 21

Cal.App.4th 1057, 1067.)  The test is whether any rational trier of fact could conclude

that the visitation order advanced the child's best interests.  (*Ibid.*)  To find an abuse of

discretion, a reviewing court would have to conclude that the court's ruling exceeded the

bounds of reason.  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

The juvenile court was entitled to credit the opinions of the Agency's social

workers, who had direct contact with the relevant parties in this case as well as

experience in determining the risks associated with placing dependent children.  (See *In

re Luke M.* (2003) 107 Cal.App.4th 1412, 1427 ["Social workers are frequently

---

[4]     Asserting that a disposition order restricting visits is governed by the same
statutory standard applicable to an order denying visitation, Mother contends the juvenile
court abused its discretion in denying unsupervised visitation because such an order
would not have threaten J.P.'s physical safety or emotional well-being.  (See *In re C.C.*
(2009) 172 Cal.App.4th 1481, 1491 [when reunification services are being provided some
visitation is mandatory unless court specifically finds any visitation with parent pose a
threat to the child's safety]; *In re T.M.* (2016) 4 Cal.App.5th 1214, 1219 [court could
deny visitation based on potential harm to minor's emotional well-being].  We decline
Mother's invitation to apply these standards to an order maintaining supervised visitation.

EXHIBIT A

recognized as experts in assessing risk and placement of children and selecting permanent plans for children."].)  Here, the social worker supported Mother's desire to spend more time practicing her parenting skills with J.P., but could not "recommend that [Mother] be alone with any of the children overnight without support" and requested that Mother "have more supervised time with [J.P.] one-on-one, which has already begun and to continue to have discretion to allow unsupervised time to help [Mother] further practice the skills she is learning."

Although Mother had positive interaction with J.P. during visits and J.P. wanted to return home, the court could reasonably conclude her visitation should remain supervised until she has had time to practice her new parenting skills on J.P. and exhibited the ability to parent J.P. without using excess discipline.  The court's order maintaining supervised visitation was consistent with J.P.'s best interests and did not amount to an abuse of discretion.

EXHIBIT A

DISPOSITION

The disposition order is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

KEVIN J. LANE, Clerk of the Court of Appeal, Fourth
Appellate District, State of California, does hereby Certify
that the preceding is a true and correct copy of the Original
of this document/order/opinion filed in this Court, as shown
by the records of my office.

AARON, J.

WITNESS, my hand and the Seal of this Court.

02/19/2020

KEVIN J. LANE, CLERK

IRION, J.

By _____
Deputy Clerk

13

EXHIBIT A

# EXHIBIT B

(filed conditionally under seal)

# EXHIBIT C

(filed conditionally under seal)

# EXHIBIT D

## (filed conditionally under seal)

# EXHIBIT E

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
## EAST COUNTY DIVISION

**F I L E D**
Clerk of the Superior Court
SEP 0 4 2019
By: A. Baldwin, Clerk
EAST COUNTY DIVISION

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff,

v.

RUTH MARIEMARTINEZ POPE,

*dob* ▊▊▊▊

Defendant

CT No.  CE394072 CA
DA No.  MBT192

CHILD ABUSE

COMPLAINT-FELONY

INFORMATION

Date: _____

## PC296 DNA TEST STATUS SUMMARY

| Defendant | DNA Testing Requirements |
|---|---|
| POPE, RUTH MARIEMARTINEZ | DNA sample required upon conviction |

## CHARGE SUMMARY

| Count | Charge | Issue Type | Sentence Range | Special Allegations | Allegation Effect |
|---|---|---|---|---|---|
| 1 | PC273a(a) | Felony | 2-4-6 | | |
| | POPE, RUTH MARIEMARTINEZ | | | PC1192.7(c)(8) | Serious |
| | | | | PC12022.7(a) | +3 Yrs |
| | PC1054.3 | | INFORMAL REQUEST FOR DISCOVERY | | |

The undersigned, certifying upon information and belief, complains that in the County of San Diego, State of California, the Defendant(s) did commit the following crime(s):

EXHIBIT E

# CHARGES

## COUNT 1 - CHILD ABUSE - FELONY

On or about June 12, 2019, RUTH MARIEMARTINEZ POPE did willfully and unlawfully, under circumstances likely to produce great bodily harm and death, injure, cause, and permit JORDAN P., a child, to suffer and to be inflicted with unjustifiable physical pain and mental suffering, and, having the care and custody of said child, injure, cause, and permit the person and health of that child to be injured and did willfully cause and permit that child to be placed in a situation where his or her person and health is endangered in violation of PENAL CODE SECTION 273a(a).

And it is further alleged that in the commission and attempted commission of the above offense, the said defendant, RUTH MARIEMARTINEZ POPE, personally inflicted great bodily injury upon JORDAN P., not an accomplice to the above offense, within the meaning of PENAL CODE SECTION 1192.7(c)(8).

And it is further alleged that in the commission and attempted commission of the above offense the defendant, RUTH MARIEMARTINEZ POPE, personally inflicted great bodily injury upon JORDAN P., not an accomplice to the above offense, within the meaning of PENAL CODE SECTION 12022.7(a).

NOTICE: Any defendant named on this complaint who is on criminal probation in San Diego County is, by receiving this complaint, on notice that the evidence presented to the court at the preliminary hearing on this complaint is presented for a dual purpose: the People are seeking a holding order on the charges pursuant to Penal Code Section 872 and simultaneously, the People are seeking a revocation of the defendant's probation, on any and all such probation grants, utilizing the same evidence, at the preliminary hearing. Defenses to either or both procedures should be considered and presented as appropriate at the preliminary hearing.

NOTICE: Any defendant named on this complaint who is on Mandatory Supervision in San Diego County is, by receiving this complaint, on notice that the evidence presented to the court at the preliminary hearing on this complaint is presented for a dual purpose: the People are seeking a holding order on the charges pursuant to Penal Code Section 872 and simultaneously, the People are seeking a revocation of the defendant's Mandatory Supervision pursuant to Penal Code Sections 1170(h)(5)(B) and 1203.2, on any and all such grants, utilizing the same evidence, at the preliminary hearing. Defense to either or both procedures should be considered and presented as appropriate at the preliminary hearing.

Pursuant to PENAL CODE SECTION 1054.5(b), the People are hereby informally requesting that defendant's counsel provide discovery to the People as required by PENAL CODE SECTION 1054.3.

Sheriff's records indicate that as of the booking date one or more defendants have not yet provided a DNA sample to the DOJ database. Pursuant to Penal Code Section 296(e), the court shall order collection of DNA from the defendant(s) if advised by the prosecuting attorney that a sample is required but has not been provided by the defendant. Pursuant to Penal Code sections 296/296.1, if not already required from a past conviction, any defendants who have not done so will be required to provide a sample upon conviction of this felony offense.

MANDATORY STATE PRISON INCARCERATION: An executed sentence for a felony shall be served by defendant RUTH MARIEMARTINEZ POPE in state prison pursuant to PENAL CODE SECTIONS 1170(f) and (h)(3).

EXHIBIT E

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT AND THAT THIS COMPLAINT, CASE NUMBER CE394072, CONSISTS OF 1 COUNT.

Executed at City of El Cajon, County of San Diego, State of California, on September 3, 2019.

_____

COMPLAINANT

---

INFORMATION

SUMMER STEPHAN
District Attorney
County of San Diego
State of California
by:

_____
Date

_____
Deputy District Attorney

Page 3 of 3, Court Case No. CE394072

EXHIBIT E

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| PEOPLE vs.Ruth Pope                    Defendant | FILED Clerk of the Superior Court FEB 1 7 2021 |
| **PLEA OF GUILTY/NO CONTEST – MISDEMEANOR DOMESTIC VIOLENCE** | Case # CE394072<br>DA/CA/ # MRT 192 aFerriere, Clerk<br>By: M. La |

**INSTRUCTIONS:** Fill out this form if you wish to plead guilty or no contest to charges against you. **Initial** each applicable item **only** if you understand it. If you have any questions about the possible sentence, or the information on this form, ask your attorney or the judge.

I, the defendant in the above-entitled case, personally and/or by my attorney, declare as follows:

| | |
|---|---|
| 1. I am sober, my judgment is not impaired, and I have not consumed any alcohol or other drug within the past 24 hours. | RP   1. |
| 2. I am entering a plea freely and voluntarily, without threat or fear to me or anyone closely related to me. | RP   2. |
| 3. I understand that a plea of No Contest is, for all purposes, the same as a plea of Guilty. | N/A   3. |
| 4. **PLEA.** Of those charges now filed against me in this case, I plead Guilty ___ to the following offenses and admit the prior convictions as follows:   *(GUILTY/NO CONTEST)* | RP   4. |

| COUNT | LIO | CHARGE | | PRIORS | |
|---|---|---|---|---|---|
| | | | Date of Conviction | Charge | Case Number |
| AM 2 | | PC273a(a)/17(b) 4 | N/A | N/A | N/A |
| | | | | | |
| | | | | | |

| | |
|---|---|
| 5. **FACTUAL BASIS.** I admit that on the dates charged, I (describe facts as to each charge and allegation) did unlawfully and willfully permit a child to to be in a situation where his person or health was <u>endangered under circumstances likely to inflict great bodily injury.</u> | RP   5. |

| | |
|---|---|
| 6a. **AGREEMENT.** I have not been induced to enter the above plea by any promise or representation of any kind, except: | RP   6a. |

☐ **SENTENCE TO COURT.** ☐ People dismiss balance. ☐ Other: _____.

☐ **DENY PROBATION.** SENTENCE: _____ days ☐ Releasable to Work Furlough/ _____.
   ☐ Concurrent / ☐ Consecutive to case/counts _____

☒ **GRANT PROBATION.** ☒ Imposition of sentence suspended for 3 /4 ___ years on the following terms: VNL and
   ☐ Execution of sentence suspended for 3 / ____ years on the following terms: VNL and
   **CUSTODY:** SERVE ☐ _____ days ☒ CTS ☐ STAYED on condition that _____.
   ☐ Book and release   ☐ Releasable to: ☐ Work Furlough / ☐ Residential treatment program
   ☐ Concurrent / ☐ Consecutive to case/counts _____

☒ **FINES/FEES:** PAY $874 ___ including the following:
   $_____ Court Ops. Assessment (PC1465.8) *($40 per count)*     $_____ Criminal Conviction Assessment (GC70373) *($30 per count)*
   $_____ Restitution Fund Fine (PC1202.4(b)(1)) *($150-$1,000)*     $_____ Crim. Justice Admin. Fee (GC29550 et seq) *($154 if booked)*
   $_____ Domestic Violence Fund Fee (PC1203.097) *(Min. $500)*
   ☐ PAYMENT STAYED until DVRP completed.
   $_____ Prob. Rev. Rest. Fine, suspend per PC1202.44.   Reimburse County for appointed attorney if/when able.

☒ **RESTITUTION:** PAY restitution to (Victim / VCGCB) . Hearing to be set if and when determined.
☐ **FOURTH AMENDMENT WAIVER:** Submit person, vehicle, place of residence, property, personal effects, _____
   to search at any time with or without a warrant, and with or without reasonable cause, when required by a Probation Officer or
   other law enforcement officer (to expire _____).

☐ **PUBLIC SERVICE:** PERFORM: ☐ _____ days PSP  ☐ _____ hours Volunteer Work.  ☐ STAYED until DVRP completed.
☒ **ATTEND AND COMPLETE:** ☐ Substance Abuse Assessment ☐ _____ Parenting Classes ☐ _____ Elder Abuse Classes
   ☐ 52-week DV Recovery Program: ☐ Standard ☐ Integrated DV/SA ☐ Dual Track DV/SA ☐ Non-Spousal Family Violence
   ☒ 52-week Child Abuser's Treatment Program ☐ Individual Counseling ___ weeks/months ☐ Stalking Treatment (STOP)
   ☐ Residential/Outpatient treatment alcohol/drug ☐ STAYED: <u>Classes satisfied by CWS classes already completed</u> .

EXHIBIT E

| Defendant: | Case Number |
|---|---|
| Ruth Pope | CE394072 |

☐ Comply with Cal/Fed Firearms Prohibition on controlling, possessing, or having access to any firearm.
☒ Comply with terms of Protective Order ☐ including "stay away" terms.
☐ **DRIVER LICENSE** ☐ Suspended ☐ Delayed for _____ mos./years ☐ Surrender to court.
☒ Other CPO is a no negative contact order

6b. **FIREARMS.** I ☐ do ☐ do not own, possess, or have access to any firearm. | N/A | 6b.

### RIGHT TO AN ATTORNEY

7a. I understand that I have the Constitutional **right to be represented by an attorney** at all stages of the proceedings including sentencing. I can hire my own attorney or the court will appoint an attorney for me if I cannot afford one. | RP | 7a.

7b. I understand that I have the right to be present in court to enter my plea and for sentencing. I expressly authorize my attorney to enter this plea on my behalf, in my absence. **I understand that I must be personally present at the time of sentencing.** | RP | 7b.

### CERTAIN CONSTITUTIONAL RIGHTS WHICH I GIVE UP

I understand that as to all charges, allegations and prior convictions filed against me I also have the following Constitutional rights, which I now give up to enter my plea of **Guilty/No Contest**.

8. I have the right to a **speedy and public trial by jury. I now give up this right.** | RP | 8.

9. I have the right to **confront and cross-examine all the witnesses** against me. **I now give up this right.** | RP | 9.

10. I have the right to **remain silent** (unless I choose to testify on my own behalf). **I now give up this right.** | RP | 10.

11. I have the right to **present evidence in my behalf** and to have the court subpoena my witnesses at no cost to me. **I now give up this right.** | RP | 11.

### CONSEQUENCES OF PLEA OF GUILTY OR NO CONTEST

12. I understand the possible consequences of entering a plea of Guilty or No Contest include a maximum sentence of up to 1 months/years(s) in jail and fine(s) of up to 1k plus additional consequences specified in any attached addendum, and any other reasonable conditions of probation, which could be for a maximum of 3 / 5 years. | RP | 12.

13. My attorney has explained to me that other possible consequences of this plea may be (circle appropriate consequences): (a) lifetime registration as a sex offender; (b) registration as a narcotics offender; (c) limited local custody credits (290/serious/prior); (d) qualified for sentencing under PC § 1170(h)(3) in future cases. | N/A | 13.

14. I understand that in addition to any fine imposed, the law requires the court to add penalty assessments which will substantially increase the amount I must pay. In addition, I understand that I may be ordered to make restitution to the victim, if the offense involved a victim, or to a restitution fund. I understand that I shall be ordered to pay a mandatory restitution fine and a probation revocation restitution fine of the same amount if probation is revoked and not reinstated. I understand I must file a revised financial declaration if there is any balance unpaid on a restitution order or fine 120 days prior to release from probation. | RP | 14.

15. **Immigration consequences:** (1) I understand that if I am not a U.S. citizen, this plea of Guilty/No Contest may, and for certain offenses **will** (see page 5), have the consequences of removal/deportation, exclusion from admission to the United States, and/or denial of naturalization pursuant to the laws of the U.S.; (2) I understand I have the right to request additional time to consider my plea in light of the advisement in this paragraph; (3) I have discussed my immigration status with my attorney and have had sufficient time to consider and discuss the immigration consequences of my plea with him/her or an immigration attorney. | RP | 15.

16. I understand that my plea of Guilty or No Contest in this case could result in revocation of my probation, mandatory supervision, post-release supervision, or parole in other cases and the imposition of consecutive sentences. | RP | 16.

17. I understand and agree that probation terms concerning substance abuse treatment may be modified without a probation violation occurring. | N/A | 17.

EXHIBIT E

| Defendant: | Case Number |
|---|---|
| Ruth Pope | CE394072 |

### OTHER WAIVERS

18. (**Time for Sentence**) I understand that I may not be sentenced earlier than six (6) hours, nor later than five (5) days after my plea. I give up this right, waive arraignment, and agree to be sentenced at this time. | RP | 18.

19. (**Certain Appeal Rights**) I give up my right to appeal the following: (a) denial of my PC1538.5 motion, and (b) any sentence stipulated herein. | RP | 19.

20. (**Harvey Waiver**) The sentencing judge may consider my prior criminal history and the entire factual background of the case, including any unfiled, dismissed, or stricken charges or allegations or cases when granting probation, ordering restitution, or imposing sentence. | RP | 20.

21. (**Arbuckle Waiver**) I give up my right to be sentenced by the judge who accepts this plea. | RP | 21.

22. (**Judicial Officer**) I agree that a duly appointed Commissioner or Temporary Judge may act as a Judge, accept this plea, impose sentence, and conduct any other post-conviction proceedings. | RP | 22.

23. (**Evidence disposal**) I give up my interest in all non-biological property/evidence impounded during the investigation of this case except _____ and acknowledge that if I listed any property here, I must also file a claim with the impounding agency within 60 days after pronouncement of judgment or my ability to make a claim will expire. | N/A | 23.

**I DECLARE UNDER PENALTY OF PERJURY**, under the laws of the State of California, that: (a) I have read, understood, and initialed each applicable item above and any attached addendum; and (b) everything on the form and on any attached addendum is true and correct.
Date: February 12, 2021 _____ Defendant's Signature: Ruth Pope _____

Defendant's Address: _____
                Street                          City        State        Zip Code
Defendant's Telephone No.: (_____)_____

### ATTORNEY'S STATEMENT

I, the attorney for the defendant in the above-entitled case, personally read and explained to the defendant the entire contents of this plea form and any addendum thereto. I discussed all charges and possible defenses with the defendant, and the consequences of this plea. **I have asked the defendant about his/her immigration status, advised defendant of the immigration consequences of this plea to the best of my ability, and advised defendant of the right to additional time to discuss this matter with an immigration attorney.** I personally observed the defendant fill in and initial each item, or read and initial each item to acknowledge his/her understanding and waivers. I observed the defendant date and sign this form and any addendum. I concur in the defendant's plea and waiver of constitutional rights.

Date: February 12, 2021 _____ Madeleine A. Garber   Garber, Madeleine _Digitally signed by Garber, Madeleine Date: 2021.02.12 19:24:26 -08'00'_
                                       (Print Name)                  Attorney for Defendant        (Signature)
(☒PD / ☐APD / ☐OAC / ☐RETAINED)

### INTERPRETER'S STATEMENT

I, the interpreter in this proceeding, having been duly sworn, truly translated this form, and any attached addendum, and all the questions therein to the defendant in the _____ language. The defendant indicated understanding of the contents of the form and then initialed and signed the form and any attached addendum.

Date: _____
                                     (Print Name)                  Court Interpreter          (Signature)

### PROSECUTOR'S STATEMENT

The People of the State of California, plaintiff in the above-entitled criminal case, by and through its attorney concurs with the defendant's plea of Guilty/No Contest as set forth above.

Date: 2/16/21 _____ Meredith Pro   Meredith Pro _Digitally signed by Meredith Pro Date: 2021.02.16 09:34:21 -08'00'_
                                     (Print Name)     Deputy District Attorney/Deputy City Attorney     (Signature)

EXHIBIT E

| Defendant: | Case Number |
|---|---|
| Ruth Pope | CE394072 |

## COURT'S FINDING AND ORDER

The court, having questioned the defendant/defendant's attorney concerning the defendant's plea of Guilty/No Contest and admissions of the prior convictions and allegations, if any, finds that: the defendant understands and voluntarily and intelligently waives his/her constitutional rights; the defendant's plea and admissions are freely and voluntarily made; the defendant understands the nature of the charges and the consequences of the plea and admissions; and there is a factual basis for same. The court accepts the defendant's plea and admissions, and the defendant is convicted thereby.

Date: **2.17.21**

Judge/Commissioner of the Superior Court

**ROBERT O. AMADOR**

## IMMIGRATION CONSEQUENCES

If you are not a U.S. citizen, you should consult your attorney or an immigration attorney about the immigration consequences of your plea, particularly if your offense might qualify as an "aggravated felony," crime of moral turpitude, controlled substance offense, firearm offense, or domestic violence offense (see below). It is your attorney's obligation to provide you with accurate and affirmative advice about the immigration consequences of your plea, and you have the right to additional time to evaluate those immigration consequences. By entering a plea, you are indicating to the court you know of and understand the specific immigration consequences that will result from your conviction.

Immigration consequences are a matter of federal law. Whether an offense qualifies as one of the "aggravated felonies" listed below is determined by federal statutes and case law. (See *Esquivel-Quintana v. Sessions* (2017) __ U.S. __ , 137 S.Ct. 1562, 198 L.Ed.2d 22.) **Certain offenses defined as misdemeanors under State law may be considered "aggravated felonies" under federal law.**

Any conviction of a non-citizen for an "aggravated felony" **will** result in removal/deportation, exclusion, and/or denial of naturalization. (See 8 U.S.C. § 1227(a)(2)(A)(iii).) "Aggravated felonies" (see 8 U.S.C. § 1101(a)(43)) include but are not limited to:

(1)  Murder; rape; or sexual abuse of a minor;
(2)  A crime of violence, as defined in 18 U.S.C. § 16, but not including a purely political offense;*
(3)  Trafficking of a controlled substance, firearms, destructive devices or explosive materials;
(4)  Money laundering if the amount exceeds $10,000;
(5)  An explosive materials offense;
(6)  A firearms offense;
(7)  A theft offense, including receipt of stolen property, or burglary offense;*
(8)  Child pornography;
(9)  Pimping, Pandering, or operating a prostitution business;
(10) Human trafficking;
(11) Fraud or deceit in which the loss to the victim or victims exceeds $10,000;
(12) Failure to appear by a defendant for service of a sentence if the underlying offense is punishable by imprisonment for a term of 5 years or more, or failure to appear to answer or resolve a felony for which a sentence of 2 years' imprisonment or more may be imposed;
(13) Commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered;*
(14) Obstruction of justice, perjury or subornation of perjury, or bribery of a witness;*
(15) An attempt or conspiracy to commit any of the above offenses.

*If the term of imprisonment is at least one year.

Other crimes (*as defined by federal law*) that may result in removal/deportation, exclusion, and/or denial of naturalization or other severe immigration consequences include, but are not limited to:

(1)  A crime of moral turpitude (see 8 U.S.C. §§ 1182(a)(2)(A)(i), 1227(a)(2)(A)(i));
(2)  A controlled substance offense (see 8 U.S.C. §§ 1182(a)(2)(A)(i), 1182(a)(2)(C), 1227(a)(2)(B));
(3)  A firearm or destructive device offense (see 8 U.S.C. § 1227(a)(2)(C));
(4)  A domestic violence, stalking, or child abuse offense (see 8 U.S.C. § 1227(a)(2)(E)(i));
(5)  Violation of a protective order (see 8 U.S.C. § 1227(a)(2)(E)(ii));
(6)  A human trafficking offense (see 8 U.S.C. §§ 1182(a)(2)(H), 1227(a)(2)(F));
(7)  Multiple criminal convictions with an aggregate sentence of 5 years or more (see 8 U.S.C. § 1182(a)(2)(B));
(8)  A prostitution offense (see 8 U.S.C. § 1182(a)(2)(D));
(9)  A "serious criminal offense," which includes any felony, a crime of violence, and reckless driving or DUI with injury (see 8 U.S.C. § 1182(a)(2)(E)).

EXHIBIT E